676 So.2d 557 (1996)
James Billy Ray FONTENOT, et al.
v.
CHEVRON U.S.A. INC., Dantzler Boat and Barge Co., and Aetna Casualty and Surety Co.
No. 95-C-1425.
Supreme Court of Louisiana.
July 2, 1996.
*558 Darryl M. Phillips, New Orleans, Gainsburg, Benjamin, David, Meunier, Noriea & Warshauer, J. Michael Placer, Lafayette, for Applicant.
Ben E. Clayton, New Orleans, Lefant & Associates, for Respondent.
CALOGERO, Chief Justice.[*]
The issue in this case is whether the Louisiana Oilfield Anti-Indemnity Act, La. RS *559 9:2780, applies in determining the validity and interpretation of a waiver of subrogation clause in a worker's compensation insurance policy.
Hercules Offshore Drilling Company entered into a workover contract with Chevron, USA, Inc. for "remedial well services" and the performance of drilling or workover operations on several Chevron platforms located in the Gulf of Mexico. In its contract with Chevron, Hercules agreed to provide its employees with federal Longshore and Harbor Workers' Compensation insurance and further agreed to a blanket and unrestricted waiver of its right, and consequently its insurer's right, to subrogation for reimbursement of such worker's compensation benefits as it or its insurer might be required to pay. Specifically, the Workover Contract provided:
CONTRACTOR [Hercules] agrees that its Workmen's Compensation insurance policy shall be endorsed to designate OPERATOR [Chevron] as an alternate employer and as a statutory employer, and shall be endorsed to provide a blanket and unrestricted waiver of its underwriter's or insurer's rights of subrogation. (emphasis added.)
Aetna Casualty and Surety Company provided a policy of worker's compensation insurance to Hercules. Responsive to the contractual obligation of Hercules, Aetna waived its right to subrogation in its contract of worker's compensation insurance with Hercules. The contract of insurance states in pertinent part:
WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT
We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule.... This agreement shall not operate directly or indirectly to benefit any one not named in the Schedule.
Schedule
"FOR COVERAGE OBTAINED THROUGH THE LOUISIANA WORKERS COMPENSATION INSURANCE PLAN, THE COMPANY SHALL AS APPLICABLE INDICATE A PREMIUM CHARGE OF 1% OF THE TOTAL STANDARD PREMIUM SUBJECT TO A MINIMUM CHARGE OF $250, AND A MAXIMUM CHARGE OF $1,500."
"ALL PERSONS OR ORGANIZATIONS THAT ARE PARTIES TO A CONTRACT THAT REQUIRES YOU TO OBTAIN THIS AGREEMENT, PROVIDED YOU EXECUTED THE CONTRACT BEFORE THE LOSS."
Hence, this waiver applied to Chevron, and an increase in premium was charged by Aetna and paid by Hercules in exchange for Aetna's waiving these compensation subrogation rights.
After a Hercules employee was injured in the course and scope of his employment, Aetna paid worker's compensation benefits and then intervened in the employee's state court lawsuit which raised claims of negligence and a breach of Civil Code article 2317 against Chevron and two other defendants. The employee, James Billy Ray Fontenot, settled his lawsuit, as explained further below, and then filed a motion for summary judgment against Aetna, arguing that Aetna was not entitled to reimbursement because it had waived its right of subrogation in its policy with Hercules (which, of course, it had). Aetna then filed a cross motion for summary judgment, arguing that such a waiver of subrogation was prohibited, and unenforceable under the Anti-Indemnity Act, La. RS 9:2780.[1] In response, the employee argued that federal maritime law, which allowed indemnity and waiver of subrogation clauses, was alone applicable and it superseded Louisiana's Anti-Indemnity Act. Hence, *560 the waiver of subrogation provision was valid and Aetna's recovery barred.
The trial court granted Aetna's cross motion for summary judgment, determining that Aetna was entitled to receive the full amount of its intervention, and to be reimbursed for the monies paid in worker's compensation benefits, presumably based upon a legal conclusion that Aetna's waiver of subrogation was invalid because of Louisiana's Anti-Indemnity Act. The Court of Appeal affirmed. The record does not reflect a judgment on the employee's motion for summary judgment filed against Aetna, although by implication it has surely been denied.
We granted writs to consider the applicability of Louisiana's Anti-Indemnity Act in these circumstances. After reviewing the record and the pertinent law, we conclude that Aetna's waiver of subrogation of its claim for reimbursement of worker's compensation benefits paid to plaintiff is enforceable because Louisiana's Anti-Indemnity Act does not apply in this situation.
James Billy Ray Fontenot, an employee of Hercules, was assigned as a crane operator to Chevron South Pass 62A Platform, a fixed or stationary oil platform located in South Pass 62 A off Venice, Louisiana. On July 31, 1989, Chevron was forced to evacuate the platform because of an approaching hurricane. The majority of employees were evacuated by helicopter, or by use of a personnel basket which was used to transfer employees from the platform to the M/V BIG CHIP, a transport vessel allegedly owned pro hac vice, operated, chartered, managed and/or controlled by Dantzler Boat and Barge Co.[2] Fontenot operated the crane which transferred the personnel basket from the platform to the waiting vessel. The vessel was brought alongside the platform but was not moored or anchored. As there was no one available to work the crane when it was Fontenot's turn to evacuate the platform, he was instructed to board the M/V BIG CHIP by swinging on a rope from the platform to the vessel. Because of the rough seas, his first swing rope transfer attempt failed, and he was forced to swing back to the platform. He then made a second attempt and fell to the deck of the vessel, injuring his back, hip and other parts of his body. His injuries later required surgery.
Fontenot and his wife, individually and on behalf of their two children, filed suit against Chevron as owner of the platform, Dantzler as owner and operator of the vessel M/V BIG CHIP, and a Chevron representative (who was later dismissed). Suit was brought pursuant to the provisions of the "savings to suitors" clause, 28 U.S.C. § 1333(1), which allowed Fontenot to bring his claims in state court. Fontenot and his family alleged that defendants were negligent in forcing him to evacuate the platform by swing rope transfer onto an unmoored vessel in rough seas. Mrs. Fontenot and the two children filed loss of consortium claims. Chevron filed a cross claim against Dantzler. Aetna intervened, seeking subrogation for medical and wage compensation benefits it had paid to Fontenot as Hercules' worker's compensation insurer.[3] As earlier indicated, prior to trial Fontenot settled his claim against Chevron and Dantzler for $437,500 without the participation or consent of Aetna.
Cross-motions for summary judgment were filed by plaintiff Fontenot and intervenor Aetna on the issue of whether Aetna was *561 entitled to subrogation and reimbursement of the compensation payments made to Fontenot out of the proceeds received by Fontenot in settlement of his claims against Chevron and Dantzler, notwithstanding the waiver of subrogation in Aetna's insurance contract with Hercules. The trial court granted Aetna's motion for summary judgment and the Court of Appeal affirmed. Fontenot, Chevron and Dantzler appealed.
In affirming the trial court, the Court of Appeal rejected appellants' argument that this case was governed by 33 U.S.C. Section 905(c), a federal statute which provides for suits by certain persons allegedly injured by the "negligence of a vessel" and which specifically sanctions the enforcement of indemnity provisions.[4] The Court of Appeal noted that this statute refers only to indemnity agreements which exist between the employer and a vessel, and in this case, there is no evidence of any indemnity agreement between the employer, Hercules, and the operator of the vessel, Dantzler. Thus, the Court of Appeal concluded that even if 33 U.S.C. Sec. 905(c) is inconsistent with Louisiana's Anti-Indemnity Act as appellants argue (because it expressly authorizes the type of indemnity agreements which Louisiana's Anti-Indemnity Act prohibits), it does not displace or supersede the state statute because it does not apply under the facts of this case.[5]
The appellate court then turned to La. RS 9:2780(B) of Louisiana's Anti-Indemnity Act, which invalidates certain indemnity agreements, and concluded that the statute would make any waiver of subrogation by Aetna unenforceable. The Court of Appeal further held that even if the waiver of subrogation against Chevron were valid, the result would be the same because appellants cannot show a waiver of subrogation in favor of co-defendant Dantzler. So Aetna would still be entitled to seek recovery on its subrogated claim against Dantzler. Thus, the Court of Appeal affirmed the trial court's granting Aetna's motion for summary judgment. One member of the Court of Appeal panel dissented.[6]
*562 Fontenot, Chevron and Dantzler applied for writs in this Court, assigning as errors the appellate court's failure to invoke federal maritime law to a claim cognizable in admiralty, its purportedly erroneous conclusion that under Herb's Welding, Inc. v. Gray, 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985), a workover contract is a non-maritime contract, and its finding that the workover contract was subject to Louisiana's Anti-Indemnity Act, a finding which is allegedly inconsistent with prior jurisprudence and interferes with the uniformity of federal maritime law.
Appellants invite us to frame the issue in this case as whether federal maritime or state law applies, proposing that the workover contract is maritime in nature and thus that federal maritime law, which sanctions the enforcement of indemnification clauses, applies in this case and displaces Louisiana's Anti-Indemnity Act. We do not agree that this is the proper approach. We will begin, instead, with an examination of whether the Anti-Indemnity Act is applicable in the factual situation before us. If it is applicable, it is only at that point that a consideration of the maritime or non-maritime nature of the contract is necessary. If the Anti-Indemnity Act is not applicable, we need proceed no farther.
It is important to keep certain principles of judicial interpretation of statutes in mind when we consider the applicability of the Anti-Indemnity Act to this case. As we stated in Touchard v. Williams, 617 So.2d 885, 888 (La.1993), the paramount consideration for statutory interpretation is the ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law. However, "[w]hen the literal construction of a statute produces absurd or unreasonable results `the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result.'" Green v. Louisiana Underwriters Insurance Co., 571 So.2d 610, 613 (La.1990). La. Civil Code art. 9 instructs that a clear and unambiguous law shall be applied as written "when its application does not lead to absurd consequences." Our task, then, is to interpret the Anti-Indemnity Act in accordance with the intent of the legislature, keeping in mind the spirit of the law and the avoidance of an absurd or unreasonable result.
We turn then to an examination of Louisiana's Anti-Indemnity Act. As explained by commentators,
[E]nacted at a time when offshore competition was fast and fierce, that Act sought to remedy the perceived inequity foisted upon certain contractors by agreements which purported to grant indemnification to the oil companies for their own negligence or strict liability. [fn omitted] This legislation was prompted by service companies who feared that unless they absorbed the costs of the oil companies' liabilities, they would be excluded from the oilfield market.
Panagiotis, Offshore UpdateFive Years After Passage: Contractual Indemnity, Defense and Insurance under the Louisiana Oilfield Indemnity Act, 10 Maritime Lawyer 203, 204 (1985). The Act itself is very clear in its statement of purpose found at La. RS 9:2780(A):
A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
*563 As we stated in Rodrigue v. Legros, 563 So.2d 248, 254 (La.1990), the "purpose of the legislature [sic], and thus the policy interest of the state, is to protect certain contractors, namely those in oilfields, from being forced through indemnity provisions to bear the risk of their principals' negligence.... This is an exception to general Louisiana contract law that allows a principal to be indemnified against his own negligence so long as that intent is clearly expressed."
Thus, it is clear that Louisiana's Anti-Indemnity Act arose out of a concern about the unequal bargaining power of oil companies and contractors and was an attempt to avoid adhesionary contracts under which contractors would have no choice but to agree to indemnify the oil company, lest they risk losing the contract. It is also clear from the specific language of this Subsection A that the Anti-Indemnity Act was designed not only to protect oilfield contractors but also their employees.
Subsection B of La. RS 9:2780 incorporates the purpose of the legislation, providing:
Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.
(emphasis added.) In Meloy v. Conoco, Inc., 504 So.2d 833, 838 (La.1987), we confirmed that such agreements are voided only to the extent that they purport to require indemnification and/or defense where there is negligence or fault on the part of the indemnitee; otherwise, they are enforceable just as any other legal covenant.[7]
Other provisions of Louisiana's Anti-Indemnity Act expound on Subsection B's prohibitions. Subsection G specifically addresses waiver of subrogation and additional named insured endorsements:
G. Any provision in any agreement arising out of the operations, services, or activities listed in Subsection C of this Section of the Louisiana Revised Statutes of 1950 which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect.
In discussing this prohibition on waivers of subrogation, one commentator noted that the prohibition should directly benefit the injured employee because "[p]resumably, under this new law, the employer will invoke his subrogation rights, thereby placing himself *564 side by side with his injured worker in trying to recover from the third party tortfeasor." Preis, Broussard, The Louisiana Oilfield Indemnity Act of 1981, 29 La.Bar.J. 179, 180 (1981).
To determine the applicability of Louisiana's Anti-Indemnity Act, courts have engaged in a two-step test. See Transcontinental Gas v. Transportation Ins. Co., 953 F.2d 985, 991 (5th Cir.1992). First, there must be an agreement that "pertains to" an oil, gas or water well. Second, the agreement must be related to exploration, development, production, or transportation of oil, gas, or water. The workover contract, which the contracting parties describe as "a contract for remedial well services," passes these two tests.
Subsection I of the Act broadens its coverage to "certain provisions contained in, collateral to or affecting agreements ..." covered by the Act. Hence, the insurance contract which is ancillary to the workover contract also satisfies these requirements for the Act's applicability.[8] Therefore, we need to examine specifically whether the waiver of subrogation clause contained in the insurance contract falls within the scope of the Act, and if so, whether invalidation of such waiver promotes the purposes of the Anti-Indemnity Act.
We first examine Subsection B of the Act (quoted earlier in this opinion). On its face, Subsection B addresses only provisions which purport to or which do provide for "defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons" caused by negligence or fault of the indemnitee. The waiver of subrogation clause in the insurance contract at issue does not fall within these prohibitions because it does not require indemnification or the shifting of liability from the tortfeasor to another party. Rather, the waiver of subrogation clause only prohibits the worker's compensation insurer from asserting any claims it may have for reimbursement of monies paid in compensation benefits.
Subsection G of the Anti-Indemnity Act specifically addresses waivers of subrogation, stating that any provision "which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section (emphasis added)" are null and void and of no force and effect. At first glance, this provision may appear to answer the question raised in this case and invalidate Aetna's waiver of subrogation clause. However, upon closer examination of the purpose of Subsection G and the Anti-Indemnity Act in its entirety, we reach a different conclusion. Although the insurance contract does contain a waiver of subrogation which violates Subsection G, in this case the waiver does not frustrate or circumvent the prohibitions of the Act.
First, the Act's prohibition of a waiver of subrogation clause only benefits the oil company, or indemnitee, when it is applied in conjunction with an indemnification clause, which is not the case at bar. As explained by a commentator,
Subsection G of the Act is aimed toward preventing the use of insurance contracts to circumvent the Act. [fn omitted] In the past, oilfield service companies were required to have their insurers waive their subrogation rights against the oil companies. This waiver of subrogation, acting in conjunction with the indemnity provisions of standard drilling contracts, resulted not only in the loss of compensation payments made by the service company's insurer, but also in the service company picking up the tab for both the cost of defense and the amount of damage obtained from the oil company. Instead of being liable for either tort damages or workers compensation, the service company was liable for both.
(emphasis added). Panagiotis, supra at 247.
The indemnification clause and the waiver of subrogation clause, when used together, fit *565 hand in glove. They offer two distinct advantages to an oil company contracting with an oilfield service contractor. The indemnification clause allows the oil company to shift liability to the oilfield service contractor. The waiver of subrogation supplements this shifting of liability by assuring that the oil company will not be exposed to an action for reimbursement of compensation payments. When the waiver of subrogation clause is used alone, there is no shifting of liability to "supplement". And by itself, a waiver of subrogation clause does not shift the oil company's liability. This shift of liability only occurs when the two clauses are used together. Thus, voiding a waiver of subrogation clause only achieves the purpose of the Anti-Indemnity Act when such a clause is sought to be enforced in conjunction with the enforcement of an indemnification clause.
Second, under the facts of this case, the waiver of subrogation does not "frustrate or circumvent the prohibitions" of the Act, as Subsection G requires. In this case, we are considering the validity of a waiver of subrogation clause standing alone and not such a clause used together with an indemnification clause in an attempt to shift tort liability from the tortfeasor oil company to the employer. Does it make sense to void a waiver of subrogation clause where there is no indemnification clause sought to be enforced or where the oil company is not found to be negligent or strictly liable? We think not. The whole purpose of inclusion of the prohibition of waivers of subrogation in the Anti-Indemnity Act is to prevent use of insurance contracts to frustrate or circumvent the Act. Panagiotis, supra at 247. Where a waiver of subrogation clause does not shift liability from a tortfeasor oil company back to the oilfield service contractor, the purposes of the Act are certainly not frustrated or circumvented. In this case, not only does Chevron not seek to enforce the indemnification clause, but it has also not been adjudicated at fault (because it did not admit fault or liability, plaintiff's recovery being by way of compromise) and thus would not be liable in any way whatsoever for the payment of the employee's damages or reimbursement to the employer or his insurer for the employee's worker's compensation benefits. Thus, the waiver of subrogation does not act to shift any liability on the part of the oil company back to the oilfield service contractor employer, and therefore, the waiver of subrogation does not frustrate or circumvent the prohibitions of the Act.
In addition to Subsection B and Subsection G of the Act, Subsection I also delineates what is covered by the Act, referring to provisions "contained in, collateral to or affecting agreements" in connection with oil and gas activities "which are designed to provide indemnity to the indemnitee for all work performed between the indemnitor and the indemnitee in the future". While arguably this paragraph may sweep insurance contracts into the scope of the Act, such a sweep is limited to activities "which are designed to provide indemnity to the indemnitee". Hence, Subsection I does not specifically include waivers of subrogation in the Act's prohibitions.
We therefore conclude that nothing on the face of the Anti-Indemnity Act requires us to invalidate the waiver of subrogation clause contained in the insurance contract between Aetna and Hercules. Our conclusion is further bolstered by a consideration of the purpose of the Anti-Indemnity Act.
Does application of Louisiana's Anti-Indemnity Act to the insurance contract between Hercules and Aetna foster the purposes of the Act? We think not. If bargaining inequities existed between Hercules and Chevron which gave rise to inclusion of the indemnity provision and the waiver of Hercules' and its insurer's subrogation rights in the workover contract, applying Louisiana's Anti-Indemnity Act to the insurance contract in this case will have no effect on these inequities. Applying Louisiana's Anti-Indemnity Act to the insurance contract will not nullify the indemnity clause in the workover contract between Hercules and Chevron, and thus will not accomplish the stated purpose of the Act. Such application would only allow Aetna to escape from a contractual obligation which it voluntarily undertook in exchange for an increased premium. Such an interpretation of the statute *566 would lead to an absurd and unreasonable result that favors Aetna, the insurance company which was compensated for the waiver it now seeks to avoid, over Fontenot, the employee who the Anti-Indemnity Act was specifically designed to protect.
While it may be true that the indemnity clause and the required waiver of subrogation in the workover contract are invalid vis a vis Hercules and Chevron, that is of no moment here for several reasons. First, we are not concerned today with the workover contract but rather we are only addressing the insurance contract between Aetna and Hercules. Second, Hercules was the party which undertook the obligations of indemnification and waiver of subrogation in the workover contract, but Hercules is not before us at this time asking for any relief. Third, the party which is asking for relief, Aetna, was not a party to the workover contract, and fourth, Aetna received compensation for waiving its subrogation rights. The Act's purposes are not served by giving the benefit of the waiver of subrogation to Aetna which was paid for its waiver. Our conclusion might be otherwise if we were considering Hercules' request for relief from any of the obligations it undertook in the workover contract because of the statutory invalidity of these obligations.
In response to an argument that invalidation of the waiver may discourage oil companies in the future from requiring such a waiver, we note that the merit of such a position must be balanced against the fact that Aetna has been paid for its waiver of subrogation. Hercules' purchase of this waiver from Aetna created a benefit for the employee, notwithstanding that this might not have been Hercules' principal motivation in purchasing the waiver. In the process of acquiring the waiver, Hercules provided a collateral source, facilitating double recovery (since the employee will not be required to return the worker's compensation benefits he received and will have received his tort recovery from the third party tortfeasor). Under Civil Code arts. 1978-1981, Fontenot is a third party beneficiary of the agreement between Hercules and Aetna for Aetna to waive its subrogation rights. Fontenot clearly manifested an intent to avail himself of the benefit of this waiver. Thus, the stipulation cannot be revoked without the consent of Fontenot.
Furthermore, it is the employee who would be damaged by striking the waiver of subrogation, contrary to the statute's stated purpose of protecting the employee. Chevron, which has settled its exposure by payment, will not be required to pay one cent more to the employee or any other party if the waiver is invalidated.
Moreover, and most importantly, there was no inequality in bargaining power between Hercules and Aetna, unlike the historical inequality in bargaining power between oil companies and oilfield contractors which Louisiana's Anti-Indemnity Act sought to rectify. In fact, unlike the prohibited indemnity clauses in contracts between oil companies and contractors, in this contract Aetna bargained for and received a benefit in exchange for its waiver of subrogation. That benefit was an increased insurance premium. Aetna received payment for its waiver of its subrogation rights, unlike the adhesionary contracts between oil companies and contractors in which the contractors presumably receive no special compensation for agreeing to an indemnity requirement.
On balance, any limited purpose served by invalidation of the waiver in this case is far outweighed by the damage caused by exonerating the insurance company which seeks to avoid an obligation for which it has been paid. Further, invalidation of the waiver will lead to the absurd result of allowing Aetna to be unjustly enriched at the expense of Hercules, which paid for the waiver, and Fontenot, the employee who the Act was designed to protect and who is a third party beneficiary of the waiver. Under the circumstances before us today (where Aetna received a premium in exchange for the waiver of subrogation, where oil company Chevron is not seeking to enforce the indemnification clause, where Chevron has paid monies to the employee in settlement, and where Chevron has not been found at fault), we believe the purposes of the Anti-Indemnity Act and Louisiana's public policy as expressed in the Act *567 are not offended by upholding the waiver of subrogation. The circumstances before us today simply do not evidence the evils which Louisiana's Anti-Indemnity Act was designed to eradicate.
We also note that plaintiff settled his claims against Chevron and Dantzler. According to Aetna's brief, the settlement totalled $437,500, of which Chevron paid $237,500 and Dantzler paid $200,000. Chevron agreed to pay this amount in settlement rather than attempt to enforce the indemnification clause against Hercules. Evidently, Chevron was motivated to settle, at least in part, by the Anti-Indemnity Act's prohibiting the indemnity clause which it used in its contract with Hercules. Thus, the purpose of the Act has been satisfied by Chevron's settling while foregoing its contractual indemnity which, if enforced, would have allowed it to shift its liability to the employer. And, of course, there has been no determination that Chevron, the contractual indemnitee, was at fault. Under these circumstances, what purpose does it serve to allow Aetna to collect half of plaintiff's tort recovery? Allowing Aetna to recover in this case only allows Aetna to escape its contractual obligation to waive its rights of subrogation in spite of the fact that it collected premiums in compensation for the waiver.
In sum, we conclude that Louisiana's Anti-Indemnity Act does not apply to the waiver of subrogation contained in the insurance contract between Hercules and Aetna. What is involved here is simply Aetna's attempt to seize almost one-half of plaintiff's tort recovery, notwithstanding its earlier waiver of such right, upon the strength of a provision in a statute enacted to protect oilfield contractors, and where application of Louisiana's Anti-Indemnity Act to void the waiver of subrogation would do nothing to accomplish the purpose of the Act or to address the evils the Act was designed to cure. Further, granting Aetna such relief, especially when it has been compensated in exchange for waiving its subrogation rights, does nothing to correct the inequities foisted upon Hercules at the outset when it was forced to agree to indemnify Chevron, and waive, as well as have its insurer waive, its rights to subrogation.
Aetna cannot have it both ways. It cannot be compensated to waive a right and then claim that the waiver is prohibited by law. Invalidating the waiver will not promote the purposes of Louisiana's Anti-Indemnity Act, yet it might very well do damage to basic concepts of contract law (agreement for payment in exchange for the waiver, normally a valid contractual provision). Thus, we conclude that the waiver of subrogation in the contract of worker's compensation insurance between Aetna and Hercules, which benefitted the employee Fontenot, is valid.
Aetna argues in the alternative that even if its waiver of subrogation is valid regarding claims against Chevron, there is in the record no established waiver of subrogation claims against Dantzler Boat and Barge Co. Thus, Aetna argues it did not waive any claims for reimbursement against Dantzler, presumably because Dantzler was not specifically included in the "Schedule" listed in the waiver in the insurance contract. We agree with the Court of Appeal dissent that resolution of this argument at this stage is premature. Summary judgment is improper on this issue because it is not evident from this record that a contract exists between Hercules and Dantzler under which Dantzler would require Hercules to include Dantzler in Hercules' worker's compensation policy and under which Dantzler would become a party listed in the "Schedule" in the worker's compensation insurance policy against whom Aetna's subrogation rights had been waived. This is an unresolved issue of material fact, and the matter is accordingly remanded to the trial court for further proceedings consistent with this opinion.

DECREE
For the foregoing reasons, we reverse the decision of the court of appeal, reverse the trial court's granting of Aetna's summary judgment, and remand this matter to the trial court for further proceedings consistent with this opinion.
REVERSED, REMANDED TO THE DISTRICT COURT.
*568 LEMMON, J., concurs and assigns reasons.
JOHNSON, J., additionally concurs for the purpose of expressing that she would have appellants prevail for in her opinion maritime law, rather than state law, applies in this case.
KIMBALL, J., concurs in result and assigns reasons.
VICTORY, J., dissents and assigns reasons.
LEMMON, Justice, concurring.
Chevron's requiring Hercules to waive, in the workover contract, Hercules' right to subrogation for payment of worker's compensation benefits frustrated the prohibitions of the Louisiana Oilfield Indemnity Act and clearly violated La.Rev.Stat. 9:2780G. Accordingly, if this action had gone to trial on the merits of plaintiff's claim, Hercules could have pleaded Chevron's violation of the Act to overcome any objection by Chevron to the assertion of a subrogation claim by Hercules or Hercules' insurer. However, Hercules, the party to the workover contract whom the Act was intended to protect, is not a party to this action and has not in any way raised the issue of Chevron's violation of the Act in the workover contract with Hercules. Rather, it is Hercules' insurer (Aetna) who, although not a party to the workover contract, attempts to assert the illegality of the subrogation waiver, required by the workover contract, as a basis for enforcing Hercules' subrogation right that Hercules had paid to Aetna to waive.
Aetna's claim for subrogation, asserted by intervention in plaintiff's action against Chevron, should be denied on a combination no right of action/estoppel defense. Aetna had no real and actual interest under La.Code Civ.Proc. art. 681 in intervening in plaintiff's action to assert the subrogation right it had charged plaintiff's employer an additional premium to waive.[1] Only Hercules, the party coerced by Chevron into executing the illegal waiver of subrogation provision in the workover contract, had a real and actual interest in asserting that illegality as a bar to Chevron's enforcement of the waiver.
Moreover, since Aetna accepted a premium from Hercules for its contract to pay Hercules' compensation obligation to plaintiff as well as for its waiver of the subrogation right it would have otherwise received for paying such compensation, Aetna is estopped from repudiating its waiver under the insurance contract whose validity is not in dispute.
KIMBALL, Justice, concurring in result only.
The validity of the waiver of subrogation clause contained in the Aetna policy issued to Hercules is, at least initially, dependent upon the resolution of the issue presented to this Court (but not squarely addressed in the majority opinion), i.e., "does federal maritime law apply to Aetna's claim for subrogation?" In my view, under the particular facts of this case, it does.
Though Fontenot was on the Chevron platform and, prior to his accident, performing workover activities pursuant to a workover contract between Chevron and Hercules which might, for many other purposes and in many other circumstances be characterized as a "non-maritime" contract, at the time Fontenot was injured he was evacuating the Chevron platform by swinging over the side of the platform on a rope to a vessel. In the course of utilizing this method of evacuating the platform, Fontenot fell from the rope to the deck of the Dantzler vessel, sustaining injuries in the fall. Fontenot's activities at the time of his accident satisfy both the situs (on navigable waters) and the status (maritime *569 nexus requirement) tests for claims cognizable in admiralty, as Fontenot was swinging from a rope over the Gulf of Mexico attempting to board an unmoored, unanchored vessel during evacuation of a platform due to an approaching hurricane. See Randall v. Chevron U.S.A., Inc., 13 F.3d 888, 894-98 (5th Cir.1994). Recognizing as much, Hercules, through its Longshore and Harbor Workers Compensation Act insurer, Aetna, voluntarily paid benefits and medical expenses to Fontenot for his injuries. Fontenot, as he had a right to do under the Longshore and Harbor Worker's Compensation Act, then sued Chevron, the platform owner and charterer of the vessel, and Dantzler, the vessel owner, under general maritime law for negligence. In this regard, Fontenot's claim against Chevron, pro hac vice, was a general maritime negligence action against a time-charterer for its negligent land-based decision to evacuate the platform by waterborne vessel during obviously rough weather conditions, a claim which is clearly cognizable in admiralty. Id. at 898-900. Aetna, asserting its non-statutory subrogation claim for recovery of benefits paid, intervened in Fontenot's suit against Chevron and Dantzler, and Fontenot's claim against Chevron and Dantzler was later compromised without notice to or consent by Aetna, in violation of 33 U.S.C. 933(g).
In my view, the primary error of the majority opinion's analysis, as well as the primary error of the lower courts' analyses in this case, is the focus on the contract of insurance between Aetna and Hercules, which contains the waiver of Aetna's right of subrogation. Aetna's asserted right of subrogation is not contractual; it is a non-statutory federal maritime law claim which Aetna waived in its contract of insurance with Hercules. Fontenot sued Chevron and Dantzler for negligence under general maritime law, i.e., Fontenot asserted a federal maritime claim of negligence against Chevron and Dantzler. Aetna asserted its federal non-statutory right of subrogation and indemnification to recover benefits it had paid on behalf of Hercules to Fontenot under the Longshore and Harbor Worker's Compensation Act, a federal Act. See Pallas Shipping Agency, Ltd. v. Duris, 461 U.S. 529, 538, 103 S.Ct. 1991, 1996, 76 L.Ed.2d 120 (1983) ("[E]ven without a statutory assignment of the longshoreman's claims, an employer can seek indemnification from negligent third parties for payments it has made to the longshoreman."); Francis J. Gorman, Indemnity and Contribution Under Maritime Law, 55 Tul.L.Rev. 1165 (1981) (explaining the differences between contractual and restitution based indemnification claims). As such, Aetna intervened in a suit brought under federal maritime law to assert a federal non-statutory claim for indemnification of benefits it had paid pursuant to a policy issued to cover its insured's liability under a federal Act. "There is admiralty jurisdiction over claims for contribution and indemnity if jurisdiction exists over the underlying cause of action. If there is admiralty jurisdiction, the substantive and legal rights of the parties are determined by federal maritime law, not state law." Thomas J. Schoenbaum, Admiralty and Maritime Law, § 5-18 (2d ed. 1994). Both Fontenot's claim's against Chevron and Dantzler as well as Aetna's claimed right of subrogation are based on and governed by federal law. Therefore, under the particular facts of this case, it matters not that Aetna's waiver of its federal right of subrogation occurred in the context of a contract which might be construed to be non-maritime in some other situation, e.g., if Fontenot had been injured while performing workover activities on the platform, the Chevron workover contract with Hercules as well as the Aetna contract of insurance with Hercules might well be considered non-maritime. See Herb's Welding, Inc. v. Gray, 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985). However, that is not what happened in this case. Instead, Fontenot was injured on navigable waters beyond Louisiana's territorial limits while performing a traditional maritime activity, boarding a vessel. Federal maritime law therefore governs, and the nature of the document in which Aetna waived this claim as well as the law which governs the interpretation of that document under some other factual setting is simply of no import in the instant case. There is therefore no need, as the majority does in the instant case, to determine the effect of the Louisiana Oilfield Anti-Indemnity Act on *570 such a waiver as the Anti-Indemnity Act has no application in this case: the case, including Aetna's ability to assert its right of subrogation as well as Aetna's waiver of that right of subrogation, is governed by federal maritime law.
Furthermore, even if the majority were correct in this case in its determination that federal maritime law does not govern Aetna's claim for subrogation and, instead, Louisiana law applies, I cannot agree with the majority's interpretation of the Louisiana Oilfield Anti-Indemnity Act's provisions against indemnification agreements of the sort contained in the workover contract and the Aetna policy. As the majority acknowledges, ante at 564, the Act explicitly covers insurance contracts collateral to or affecting agreements pertaining to a well for oil or gas. See La.R.S. 9:2780(B), (C), (D), and (G). The Aetna policy at issue herein is clearly collateral to and pertains to the Hercules workover contract with Chevron. As such, if federal maritime law does not apply in this case, the Louisiana Oilfield Anti-Indemnity Act specifically invalidates the waiver of subrogation clause contained in the Aetna policy.
The majority, though acknowledging "the insurance contract does contain a waiver of subrogation which violates Subsection G," ante at 564, nevertheless decides that "in this case the waiver does not frustrate or circumvent the prohibitions of the Act." Id. This analysis is both a non-sequitur and incorrect as a matter of fact. Contrary to the majority's assertion that "[t]he waiver of subrogation clause in the insurance contract at issue does not fall within these prohibitions because it does not require indemnification or the shifting of liability from the tortfeasor to another party," ante at 564, the waiver of subrogation clause at issue specifically requires a shifting of liability from Chevron, the tortfeasor, to Aetna, the compensation carrier subrogated to Hercules', its insured's, rights. By requiring Hercules to cause its insurer to waive its right of subrogation in exchange for an increased premium, which Hercules, of course, had to pay, Chevron has effectively avoided liability at the expense of its subcontractor, Hercules. This is exactly what the Louisiana Oilfield Anti-Indemnity Act was designed to prevent.
In my view, the majority's analysis of the pertinent provisions of the Louisiana Oilfield Anti-Indemnity Act will henceforth allow oil companies to circumvent the prohibitions contained in the Act by simply requiring their contractors to provide them with the same indemnification agreements prohibited in the Act through insurance agreements procured by the contractor at the contractor's expense. As this is the exact evil the legislature sought to remedy when it made the provisions of the Act applicable to insurance agreements collateral to or pertaining to agreements concerning oilfield work, I cannot agree with the majority's analysis of the Act.
For the reasons stated herein, I would hold that Aetna's claim for subrogation is governed by federal maritime law, which allows both Aetna's claim and the waiver of such a claim. As Aetna has waived its right of subrogation, it may not now assert that same right in these proceedings.
VICTORY, Justice, dissenting.
I respectfully dissent. The majority's opinion guts an important provision of the Louisiana Oilfield Anti-Indemnity Act, La. R.S. 9:2780(G), which clearly and unambiguously declares a waiver of subrogation like this "null and void and of no force and effect." As a result the plaintiff gets a "double recovery."
There is no requirement in the law that Hercules seek to nullify the waiver for it to be null and void. Nothing in the statute suggests that Aetna may not claim nullity because it was paid for the waiver. (I assume any insurer would require a higher premium for giving up its right to subrogate).
Further, Aetna's waiver clearly provides it will not "operate directly or indirectly to benefit anyone not named in the schedule." Fontenot was not named in the schedule. Thus, presumably, Aetna received a premium for waiving subrogation only against Chevron, not Fontenot. If the waiver were declared null and void, Hercules might be entitled *571 to a refund of the additional premium charged for the waiver.
NOTES
[*] Because of the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit, there was no justice designated "not on panel" under Rule IV, Part II, § 3. Panel included Chief Justice Calogero and Justices Marcus, Watson, Lemmon, Kimball, Johnson and Victory.
[1] As will be explained further below, La. RS 9:2780, the Louisiana Anti-Indemnity Act, was enacted to alleviate inequities between oil companies and oilfield contractors. The Act invalidates certain agreements between oil companies and oilfield contractors which require indemnity or defense for death or bodily injury in certain circumstances.
[2] In Fontenot's Petition for Damages, he alleges that "[t]he MV-BIG CHIP was, owned pro hoc [sic] vice, operated, chartered, managed, leased and/or controlled by defendant, Dantzler Boat and Barge Co." Par. 13. Fontenot also alleges, "[i]n the alternative, the MV-BIG CHIP was owned pro hoc [sic] vice, operated, chartered, managed, leased and/or controlled by defendant Chevron U.S.A., Inc." Par. 14.

An "owner pro hac vice" is one who assumes by charter or otherwise exclusive possession, control, command, and navigation of a vessel for a specific period of time; owner pro hac vice has complete, though perhaps only temporary, dominion over vessel entrusted to him. Hae Woo Youn v. Maritime Overseas Corp., 605 So.2d 187 (La.App. 5th Cir.1992).
[3] The Petition of Intervention does not state a specific amount claimed for reimbursement. In its motion for summary judgment, Aetna claims the right to recover $145,802.05. Correspondence in the record indicates that the amount claimed in reimbursement was $139,589.31. The trial court entered judgment granting Aetna's motion for summary judgment entitling Aetna "to receive the full amount of their intervention or $139,589.31."
[4] 33 U.S.C. Section 905(c) provides in pertinent part:

In the event that the negligence of a vessel causes injury to a person entitled to receive benefits under the Act by virtue of section 4 of the Outer Continental Shelf Lands Act, (43 U.S.C. 1333), then such person or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel in accordance with the provisions of subsection (b) of this section. Nothing contained in subsection (b) of this section shall preclude the enforcement according to its terms of any reciprocal indemnity provision whereby the employer of a person entitled to receive benefits under this Act by virtue of section 4 of the Outer Continental Shelf Lands Act (43 U.S.C. 1333) and the vessel agree to defend and indemnify the other for cost of defense and loss or liability resulting from death or bodily injury to their employees.
[5] A recent United States Fifth Circuit decision supports this conclusion. In Wagner v. McDermott, Inc., 79 F.3d 20 (5th Cir.1996), a welder was injured when he slipped and fell aboard a barge owned by the contractor engaged in the construction of an offshore platform. The contractor filed a third-party claim against the subcontractor for indemnity. The Court affirmed the district court's conclusion that the contract was not maritime in nature and further affirmed the dismissal of the contractor's claim for indemnity under 33 U.S.C. Section 905(c) of the Longshoremen and Harbor Workers' Compensation Act, finding that this provision only applied to claims by covered workers brought against a negligent vessel. The Fifth Circuit instructed that 33 U.S.C. Section 905(c) only applies where the contracting entity is entering into the contract in its capacity as the vessel, not as a party who incidentally utilizes a vessel in other operations. In the case at bar, there is no "vessel" that is party to the workover or insurance contracts, nor did Chevron enter into the workover contract in the capacity of a vessel.
[6] Aetna had argued that under Herb's Welding, Inc. v. Gray, 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985), oil and gas exploration is not maritime commerce and thus the workover contract here is non-maritime and not subject to maritime law. The majority agreed. However, the dissenting judge disagreed, pointing out that the issue in Herb's Welding was not whether oil and gas exploration constitutes maritime commerce for all purposes, but rather, whether operations coincident with oil and gas exploration constituted maritime "employment," an issue he believed to be irrelevant to resolution of the instant case. Contrary to the majority opinion, the dissent concluded that the indemnity provisions of the workover contract were permissible under 33 U.S.C. § 905(c), which preempts the Anti-Indemnity Act.

The dissent also opined that it was premature for the majority to resolve at this stage the issue of whether Aetna's waiver of subrogation was valid against Dantzler because it presented an unresolved issue of fact; that is, whether Hercules and Dantzler had entered into any type of contract that might contain such an indemnity provision.
[7] Numerous Louisiana courts of appeal have cited Meloy, supra, for the proposition that indemnity clauses are void only to the extent that they purport to require indemnification and/or defense where there is negligence or fault on the part of the indemnitee. In this case, the plaintiff settled his lawsuit with Chevron and Dantzler and so there has been no finding of negligence or fault on the part of Chevron, the indemnitee. Arguably, since there has not been a finding of negligence or fault by Chevron, the prohibition against enforcement of the indemnity clause should not be applicable. However, we concede that the United States Court of Appeals for the Fifth Circuit has reached the opposite conclusion. In Tanksley v. Gulf Oil Corp., 848 F.2d 515, 518 (5th Cir.1988), because the parties entered into a settlement, there was no judicial finding that the indemnitee was "free from fault and thus outside the scope of the Act." The Court concluded that such an affirmative finding of "freedom from fault" was necessary to determine that an indemnification clause was enforceable; thus, an indemnification clause should be considered null and void unless there is a specific finding that the indemnitee is free from fault. The Fifth Circuit recognized that its finding conflicted with public policy favoring voluntary settlements, but reasoned "[i]n the future, in this type legal situation, the impact of settlement on an existing indemnity agreement need only be factored into the determination of a fair and reasonable settlement." Id., at 518.

We see the logic in both positions, but under the circumstances of this case (where no party seeks to enforce the indemnification clause), it is not necessary for us to either adopt or reject the Tanksley conclusion.
[8] The Fifth Circuit Court of Appeals has found that "subsection I brings collateral agreements, such as insurance, within the reach of the Anti-Indemnity Act's prohibitions." Babineaux v. McBroom Rig Building Service, Inc., 806 F.2d 1282, 1284 (5th Cir.1987).
[1] Aetna's claim is really asserted against plaintiff, who was in possession of the settlement funds paid by the two tortfeasors as well as the compensation paid by Aetna. Presumably, the settlement value of plaintiff's claim in this action was the total of the settlement funds paid by Chevron and Dantzler plus the compensation already received. If so, plaintiff is not obtaining a "double recovery," as the majority suggests. Rather,

Chevron is paying less than its full obligation by taking advantage of the compensation already paid by Aetna (as insurer of Hercules' compensation obligation). Chevron thus is probably benefitting from the waiver of subrogation it illegally forced upon Hercules. The question, nevertheless, is whether Aetna, in its position as Hercules' compensated insurer, has a real and actual interest in asserting that illegality.