731 So.2d 911 (1999)
Matthew Carl PALMOUR, individually and on behalf of his minor daughter, Lindsey Nicole Palmour
v.
GRAY INSURANCE CO., American International Specialty Lines, National Union Fire Insurance Co., B & G Crane Service, Inc. and John Parker.
No. 98-CA-1256.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 1999.
*912 Edward S. Johnson, Cindy T. Matherne, Johnson, Johnson, Barrios & Yacoubian, New Orleans, Louisiana, Attorneys for Defendant/Appellant Pool Company, American International Specialty Lines, National Union Fire Insurance Company.
Philip E. Henderson, Henderson, Hanemann & Morris, Houma, Louisiana, Attorney for Defendant/Appellee B & G Crane Service, Inc.
Keogh, Cox & Wilson, Ltd., John P. Wolff, III, Collin J. Leblanc, Baton Rouge, Louisiana, Attorneys for Appellee General Star Indemnity Company.
George P. Hebbler, Jr., Turner, Young, Hebbler & Babin, New Orleans, Louisiana, Attorney for Appellee Royal Indemnity Company.
Panel composed of Judges H. CHARLES GAUDIN, CHARLES GRISBAUM, Jr. and JAMES L. CANNELLA.
CANNELLA, Judge.
Third-party defendant, Pool Company (Pool), appeals from a judgment denying its Motion for Summary Judgment on an indemnity issue and granting a Motion for Summary Judgment filed by third-party plaintiff, B & G Crane Services, Inc. (B & G). We affirm.
On July 27, 1995, B & G leased a cherrypicker crane to Pool, a subsidiary of Pool Energy Resources Company. B & G is in the business of selling and renting cranes and Pool is in the oilfield business of drilling wells and doing workovers. The crane was a 1978 P & H Omega 20, weighing 20 tons, and having an 84 foot boom, hooked lock and ball. The lease contained an indemnity and hold harmless provision in favor of B & G. The crane was being used by Pool, on the Pool premises in Harvey, Louisiana, to assist in the fabrication of an offshore drilling rig. The rig was being constructed pursuant to a contract with Pool International, Inc., who was purchasing it for sale or lease to Antah Drilling Sdn. Bhd., an Australian drilling company, who was going to use it to drill for Esso Australia, Inc.
On March 27, 1996, plaintiff, Matthew Palmour, an employee of Pool, was injured while operating the crane during the rig construction. He filed suit against B & G and John Parker. B & G filed a third party demand against Pool and its insurers, seeking defense and indemnity under the lease agreement. Plaintiff also filed suit against American International Specialty Lines and National Union Fire Insurance Co., insurers of Pool, who were to include B & G as an additional assured under their respective policies. Both Pool and B & G filed motions for summary *913 judgment. Pool's motion sought dismissal of B & G's claim because the indemnity provisions in the agreement are void under the Louisiana Oilfield Indemnity Act, La. R.S. 9:2780 (the Act). The trial judge denied Pool's motion and granted B & G's motion, finding that the indemnity provision in the lease does not meet the requirements of the test for application of the Act that was set forth in Fontenot v. Chevron U.S.A. Inc., 95-1425 (La.7/2/96), 676 So.2d 557.
On appeal, Pool argues that the trial judge erred, citing the language of the Act and jurisprudence. B & G argues in response that this was no more than a simple rental contract unrelated to the purposes of the Act.[1]
The Act was created to protect certain oilfield contractors and their employees from the inequity foisted upon them by agreements indemnifying the oil companies for their own negligence or strict liability. The Act provides in part as follows:
A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals ..., to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals ... is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.
C. The term "agreement," as it pertains to a well for oil, gas, or water, or drilling for minerals ...,as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals ..., including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.
The paramount consideration in statutory interpretation is determining the legislative intent. Fontenot v. Chevron U.S.A. Inc., 95-1425 (La.7/2/96), 676 So.2d 557, 563. La. Civil Code art. 9 provides that a clear and unambiguous law shall be applied *914 as written "when its application does not lead to absurd consequences."
In Fontenot, the Supreme Court analyzed the Act in the context of a waiver of subrogation clause contained in a workers' compensation policy issued to the contractor. The court noted that this statutory enactment is an exception to general contract law that allows a principal to be indemnified against his own negligence so long as that intent is clearly expressed. Fontenot v. Chevron U.S.A. Inc., 676 So.2d 557, 563; Rodrigue v. Legros, 563 So.2d 248, 254 (La.1990). The impetus for the enactment was explained by the commentators and cited by the Fontenot court:

[E]nacted at a time when offshore competition was fast and fierce, that Act sought to remedy the perceived inequity foisted upon certain contractors by agreements which purported to grant indemnification to the oil companies for their own negligence or strict liability. [fn omitted] This legislation was prompted by service companies who feared that unless they absorbed the costs of the oil companies' liabilities, they would be excluded from the oilfield market.
Panagiotis, Offshore UpdateFive Years After Passage: Contractual Indemnity, Defense and Insurance under the Louisiana Oilfield Indemnity Act, 10 Maritime Lawyer 203, 204 (1985).
Fontenot v. Chevron U.S.A. Inc., 676 So.2d at 562.
As the court stated, the Act "arose from a concern about the unequal bargaining power of oil companies and contractors and was an attempt to avoid adhesionary contracts under which contractors would have no choice but to agree to indemnify the oil company, lest they risk losing the contract." Fontenot v. Chevron U.S.A. Inc., 676 So.2d 557, 563.
A two-step test was established to determine the applicability of the Act. Fontenot v. Chevron U.S.A. Inc., 676 So.2d at 564; See: Transcontinental Gas v. Transportation Ins. Co., 953 F.2d 985, 991 (5th Cir. 1992). First, there must be an agreement that "pertains to" an oil, gas or water well. Fontenot v. Chevron U.S.A. Inc., 676 So.2d at 564. Second, the agreement must be related to exploration, development, production, or transportation of oil, gas, or water. Id.
Pool argues that this rental agreement falls under Paragraph C, which defines agreement in part as: "[An] agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment...." However, we disagree. As found by the trial judge, we agree that this is not an oilfield, gas field or water related agreement and does not meet the "pertains to" requirement. This is a contract to rent a crane to be used in some unnamed purpose by the lessee. Although Pool is in the business of performing oilfield work, it does not regularly fabricate oil rigs. Furthermore, cranes are used for various purposes, such as moving scrap and unloading boats. Nonetheless, even if this agreement to rent could be construed to pertain to an oil well, it does not do so within the meaning and intent of the statute because the relationship is remote. Thus, we find that applying the Act to this contract neither advances the goals of the Act nor follows the legislative intent.
The second step of the test is that the agreement must be related to exploration, development, production, or transportation of oil, gas, or water. This agreement does not relate to any of those activities. The agreement is simply for the lease of a piece of equipment. The crane was not used or intended to be used in exploration, development, production, or transportation of oil. The legislature did not intend the Act to apply to this type of agreement. Thus, we find that the trial judge did not err in denying Pool's Motion for Summary Judgment and granting the Motion for Summary Judgment filed by B & G.
Accordingly, we hereby affirm the judgment granting the Motion for Summary Judgment filed by B & G and the judgment *915 denying the Motion for Summary Judgment filed by Pool. Costs of this appeal are to be paid by Pool.
AFFIRMED.
NOTES
[1] General Star Indemnity Company and Royal Indemnity Company also filed appellee briefs, basically adopting B & G's arguments.