# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-813


PERRY LANCLOS

VERSUS

CROWN DBL, INC., ET AL.


************

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 69,614
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

************

### MICHAEL G. SULLIVAN
### JUDGE

************

Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Chris J. Roy, Sr.,[*] Judges.


**AFFIRMED.**


Michael W. Adley
Cynthia A. Acosta
Judice and Adley
Post Office Drawer 51769
Lafayette, Louisiana 70505-1769
(337) 235-2405
Counsel for Defendant/Appellant:
        Sabine Storage & Operations, Inc.

---

[*]Honorable Chris J. Roy, Sr., participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Douglas K. Williams**
**Bernard E. Boudreaux, Jr.**
**W. Brett Mason**
**Jennifer C. Dyess**
**Breazeale, Sasche & Wilson**
**Post Office Box 3197**
**Baton Rouge, Louisiana  70821-3197**
**(225) 387-4000**
**Counsel for Defendant/Appellee:**
        **Crown DBL, Inc.**

**Lawrence N. Curtis**
**Lawrence N. Curtis, Ltd.**
**Post Office Box 80247**
**Lafayette, Louisiana 70598**
**(337) 235-1825**
**Counsel for Plaintiff:**
        **Perry Lanclos**

**SULLIVAN, Judge.**

The trial court determined that the Louisiana Oilfield Indemnity Act (LOIA) does not apply to the contract sued on herein. The indemnitor under the indemnity provision of the contract appeals. For the following reasons, we affirm.

### *Facts*

Sabine Storage & Operations, Inc. (Sabine) was awarded a contract to drill a saltwater disposal well. It subcontracted Crown DBL, Inc. (Crown) to perform the work. The well is a disposal site for saltwater that is displaced by leaching or de-watering salt caverns in which natural gas is stored. An employee of one of Crown's subcontractors was injured while performing services on the well. The injured employee filed suit to recover damages he suffered as a result of his injuries and named Sabine and Crown as defendants.

Sabine's contract with Crown (the contract) included an indemnity provision under which Sabine agreed to "protect, defend and indemnify" Crown "from and against all claims . . . arising in connection herewith in favor of Operator's employees or Operator's contractors." After being sued by Mr. Lanclos, Crown requested that Sabine fulfill the obligations under the indemnity provision to defend and indemnify it. Sabine refused. Crown filed a motion for partial summary judgment, seeking to enforce the provision. The trial court granted judgment in its favor. Sabine appeals, claiming that the LOIA, La.R.S. 9:2780, renders the provision null and unenforceable.

### *Motion for Summary Judgment*

A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to

1

judgment as a matter of law." La.Code Civ.P. art. 966(B). The mover bears the initial burden of proof to show that no genuine issue of material fact exists.

Appellate courts review motions for summary judgments de novo to determine whether any genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). "A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of a legal dispute." *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765. "A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Id*. at 765-66.

### *Discussion*

Crown's motion for partial summary judgment seeks a judgment that the LOIA does not apply to Sabine's contract. The LOIA, La.R.S. 9:2708 provides in pertinent part:

> A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.

> B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability

2

for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

C. The term "agreement," as it pertains to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.

The trial court applied a two-step test to determine that the LOIA does not apply to the contract, explaining:

[T]here must be an agreement that pertains to an oil, gas, or water well. If the contract does not pertain to a well, the inquiry ends. Only if the contract has a required nexus to a well, the court may proceed to the second step, examination of the contract's involvements with operations related to the exploration, development, production, or transportation of oil, gas, or water.

As I understand the factual situation in this case, we have a salt dome and salt water was injected into the dome to make out a cavern for the purposes of storing already-produced gas. And the well in question in this case is a disposal well for purposes of disposing of the salt water either that was left over from the scoring out of the storage facility or salt water that's leached from the storage of the [gas].

So I do not find that we're involved here with a well for exploration of oil, gas, or water. What we're involved with are storage facilities: Storage of gas, natural gas, in a salt dome; and storage of waste water in a waste water well. I don't find anywhere where the courts or the act regulate the storage.

3

The test applied by the trial court was set forth by the Louisiana Supreme Court in *Fontenot v. Chevron U.S.A., Inc.*, 95-1425 (La. 7/2/96), 676 So.2d 557. In *Fontenot*, the issue was whether the LOIA invalidated a waiver of subrogation in a workers' compensation insurance policy purchased by the contractor. The insurer sought to have the waiver declared null, so it could recoup workers' compensation benefits it had paid to the contractor's injured employee. The supreme court adopted the two-step test announced by the Fifth Circuit Court of Appeal in *Transcontinental Gas v. Transportation Insurance Co.*, 953 F.2d 985 (5th Cir. 1992), to determine whether the LOIA applied to the workover contract between the contractor, which was the workers' compensation insurer's insured, and the well operator. In *Transcontinental*, 953 F.2d at 991, the Fifth Circuit had held: "if (but only if) the agreement (1) pertains to a well *and* (2) is related to exploration, development, production, or transportation of oil, gas, or water, will the Act invalidate any indemnity provision contained in or collateral to that agreement."

Sabine argues that *Fontentot* is not applicable to the contract because the issue presented there was the validity of a waiver of subrogation in a workers' compensation insurance contract, not an indemnity provision in a daywork drilling contract as here, and because the supreme court indicated that it might find the indemnity clause invalid as between the operator and the contractor. These variances do not result in the two-step test being inapplicable to the contract.

A subrogation clause, not an indemnity clause, was at issue in *Fontenot*; however, the supreme court specifically stated that it had to determine whether the LOIA was applicable to the workover contract *before* it could determine whether the waiver of subrogation in the insurance contract was enforceable. And while the

4

supreme court did observe that an indemnity clause might be invalid as between the operator and the contractor, its discussion establishes that that would not be the result in this case. The court identified the differences in the relationships and bargaining power of a contractor vis-a-vis its insurer and a contractor vis-a-vis an operator, then reiterated the purpose of the LOIA:

> As we stated in *Rodrigue v. Legros*, 563 So.2d 248, 254 (La.1990), the "purpose of the legislature [sic], and thus the policy interest of the state, is *to protect certain contractors, namely those in oilfields, from being forced through indemnity provisions to bear the risk of their principals' negligence. . . .* This is an exception to general Louisiana contract law that allows a principal to be indemnified against his own negligence so long as that intent is clearly expressed."

> Thus, it is clear that Louisiana's Anti-Indemnity Act arose out of a concern about the unequal bargaining power of oil companies and contractors and was an attempt to avoid adhesionary contracts under which contractors would have no choice but to agree to indemnify the oil company, lest they risk losing the contract.

*Fontenot*, 676 So.2d at 563 (emphasis added).

The concerns discussed in this passage are not present here because Sabine is the principal and Crown is the contractor. Crown seeks to enforce the indemnity obligations Sabine undertook in the contract; it does not seek to avoid an obligation it undertook in an adhesionary contract as the supreme court contemplated in its discussion in *Fontenot*. Additionally, Sabine had equal, if not superior, bargaining power with Crown because it was free to decide which company it awarded the contract. Accordingly, nothing in the LOIA or *Fontenot*, 676 So.2d 557, requires us to invalidate the indemnity provision in the contract.

This conclusion is not altered by the fact that the contract was for the reworking of a "well" and arguably involves the "transportation" of water, as argued by Sabine. The Legislature's stated purpose for enacting the LOIA is "to provide for

5

the invalidity of certain indemnity agreements affecting industries *engaged in the development, exploration, and exploitation of sources of energy*." Acts 1981, No. 427, § 1 (emphasis added). The saltwater disposal well is collateral to the production of natural gas, as it disposes of saltwater produced by operations to store natural gas. However, the natural gas stored in the cavern was produced from different wells, then transported to and commingled in the cavern, and no gas well is present at the site of the saltwater disposal well. We find that the saltwater is not a source of energy that is being developed, explored, or exploited as contemplated by the LOIA, but a waste byproduct which must be disposed of.

Sabine cites Louisiana cases decided before *Transcontinental*, 953 F.2d 985, and *Fontenot*, 676 So.2d 557, in support of its position that this court should apply a broad interpretation to the LOIA, rather than the limited interpretation applied by federal courts.[1] We have reviewed the opinions in the cited cases, and they do not affect our conclusion. In those cases, a contractor, not an operator, sought to be relieved of its contractual obligation to indemnify the operator. The opposite situation is presented here. Moreover, all the cited opinions predate the supreme court's decision in *Fontenot*, and all but one predate *Transcontinental*, 953 F.2d 985, and that opinion does not mention *Transcontinental*. *See Daigle v. U.S. Fid. & Guar. Ins. Co.*, 610 So.2d 883 (La.App. 1 Cir. 1992). Lastly, *Fontenot*, 676 So.2d 557, is the only case in which the supreme court addressed whether the LOIA applied to a specific contract.

---

[1]*See Daigle v. U.S. Fid. & Guar. Ins. Co.*, 610 So.2d 883 (La.App. 1 Cir. 1992) (the LOIA applied to a contract to paint heaters at a production facility); *Fuselier v. Amoco Prod. Co.*, 546 So.2d 306 (La.App. 3 Cir.), *writ denied*, 551 So.2d 630 (La.1989) (the LOIA applied to a contract to cut grass at a production facility); *Day v. J. Ray McDermott, Inc.*, 492 So.2d 83 (La.App. 1 Cir.), *writ denied,* 494 So.2d 1176 (La.1986); and *Livings v. Serv. Trucklines of Tex., Inc.*, 467 So.2d 595 (La.App. 3 Cir. 1985) (the LOIA applied to a contract to test inventory drill pipe on the pipe company's premises).

Sabine's last contention is that a material issue of genuine fact exists which prohibits summary judgment. It cites statements made by its employee, Kenneth J. Roane, in his affidavit that "the contract was for the drilling of a saltwater disposal well"; "the well was drilled so that water could be transported down the well for disposal"; "the transportation of the water down the well was essential to maintaining continued leaching of the cavern"; and "the contract does concern and pertain to an operation related to the drilling [of] the saltwater disposal well." For reasons previously discussed, we find no merit with this contention. Additionally, Mr. Roane's use of the terms "transported" and "transportation" does not create a genuine issue of material fact because the contract at issue is for a saltwater disposal well, not a well for exploration of oil, gas, or water as contemplated by La.R.S. 9:2780, and the only water transported is saltwater, which is transported for disposal, not use.

### Disposition

Finding no error with the trial court's determination that the LOIA is not applicable to the contract between Sabine and Crown, we affirm the judgment of the trial court. All costs are assessed to Sabine Storage and Operations, Inc.

**AFFIRMED.**

7