United States Court of Appeals,

Fifth Circuit.

No. 91–4317.

Oliver BROUSSARD, et al., Plaintiffs,

v.

CONOCO, INC., Defendant Third Party Plaintiff–Appellant,

v.

SHRM CATERING, INC., Plaintiff–Third Party Defendant–Appellee.

April 22, 1992.

Appeal from the United States District Court for the Western District of Louisiana.

Before REAVLEY, JOLLY and HIGGINBOTHAM, Circuit Judges.

REAVLEY, Circuit Judge:

The district court granted summary judgment in favor of an oilfield caterer after determining that Louisiana's Oilfield Anti–Indemnity Act voids a contract clause indemnifying Conoco, Inc. (Conoco) for personal injuries sustained by the caterer's employees. We affirm.

BACKGROUND

SHRM Catering Services, Inc. (SHRM, or Caterer) employed Oliver Broussard (Broussard) as a galley hand on Grand Isle 47AQ, a fixed platform in the Gulf of Mexico on the Outer Continental Shelf off of the Louisiana coast. 47AQ is a quarters platform adjacent to Grand Isle 47A, a production platform.[1] Conoco owns and operates both platforms. 47AQ contains sleeping quarters,

[1] Conoco argues on appeal that the record evidence is insufficient to establish whether Grand Isle 47A is a production platform or a junction platform, and whether the crew housed on board 47AQ performed activities related to drilling or production on 47A, or any other facility. Conoco did not raise this argument below. In its summary judgment motion, the Caterer urged that Broussard was injured in the living quarters of Conoco's "manned production platform" and that the Caterer's services were essential to the operation of the manned platform. Conoco responded that 47AQ, the literal subject matter of the contract, is not a drilling or production platform and that the OAIA is inapplicable for that reason alone. Conoco emphasized the living-quarters function of 47AQ in its brief, and even submitted the affidavit of a *production foreman* assigned to 47AQ to establish that 47AQ has only quarters and offices, but no production facilities. But Conoco did not directly challenge the Caterer's assertion that the crew living on 47AQ was

a cafeteria, and offices for Conoco employees. 47AQ houses no drilling or production facilities.

Conoco entered into a contract under which SHRM provided catering services for Conoco's employees on 47AQ. This contract obligated the Caterer to provide housekeeping, laundry, and meal preparation services. The contract also required the Caterer to indemnify Conoco for any injury to an employee of the Caterer regardless of Conoco's negligence or other fault.[2]

Broussard fell off a stool supplied by Conoco while changing linens on a sleeping bunk and injured his back. Alleging that the stool collapsed, Broussard sued Conoco to recover damages for his personal injuries. Conoco joined the Caterer pursuant to the Caterer's promise of indemnification, and both of these parties sought summary judgment on the issue of whether Louisiana's Oilfield Anti–Indemnity Act, LA.REV.STAT.ANN. § 9:2780 (West 1991) (OAIA), voids the indemnification provision.[3] The district court held that the OAIA precludes indemnification and entered judgment for the Caterer. Conoco appeals and presents our only issue.

## DISCUSSION

---

assigned to a manned production platform. On this summary judgment record we are entitled to assume that the Caterer's services were essential to the functioning of production personnel, and that the catering contract to this extent concerned production.

[2]The indemnification provision states that

> [SHRM] agrees to indemnify, defend, and hold harmless Conoco or any firm, company, organization, or individual or their contractors or subcontractors for whom Conoco may be contracted to, and/or underwriters insuring the unit against any and all claims or suits which may be brought against them by any employee of [SHRM] for bodily injury or death or loss of services arising out of the work to be performed under this contract whether such suits are based on the relationship of master and servant, third party or otherwise and even though occasioned, brought about by, or caused in whole or in part by the negligence of Conoco, its agents, employees or subcontractors, whether such negligence by [sic] sole, joint or concurrent, active or passive, primary or secondary, or by the unseaworthiness of vessels or craft, strict liability, or any defect in premises, equipment, or materials, irrespective of whether same pre-existed this Agreement.

[3]Conoco settled Broussard's claims.

The OAIA voids certain indemnification terms in "[a]ny provision contained in, collateral to, or affecting an *agreement pertaining to a well* for oil, gas, or water, or drilling for minerals...." *Id.* at 9:2780(B). An "agreement" within this statute is any agreement "concerning any *operations related to the exploration, development, production, or transportation*" of oil, gas, or minerals. *Id.* at 9:2780(C) (emphasis added). "Operations" include but are not limited to "drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, *or otherwise rendering services in or in connection with* any well drilled for the purpose of producing" any mineral. *Id.* (emphasis added). The statute also covers "an agreement to perform any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and *other goods and services furnished in connection with* any such service or operation." *Id.* (emphasis added).

This court interprets the OAIA to require a two-part inquiry: 1) whether the agreement in question pertains to a well; and 2) whether the contract is involved with "operations related to the exploration, development, production, or transportation of oil, gas, or water," as the statute defines those operations. *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.,* 953 F.2d 985, 991 (5th Cir.1992) [hereinafter *Transco*]. Noting that the issue of whether a contract "pertains to a well" requires case-by-case analysis, the *Transco* court proposed a series of factors relevant to determining the point at which natural gas in transportation "can no longer be identified with a particular well, or is so fundamentally changed ... that [it] no longer "pertains to a well.' " *Id.* at 994.

The catering contract at issue in this case does not directly concern the transportation of oil or gas, or maintenance of a pipeline junction platform detached from production, and consequently some of the *Transco* factors are not relevant. But other factors are, and we specifically consider in this case

> (1) whether the structures or facilities to which the contract applies or with which it is associated are part of an in-field production system;

(2) what is the geographical location of the structure or facility relative to a well or wells;

(3) what is the purpose or function of the facility or structure in question;

(4) who owns and operates the relevant facility or structure;

(5) and "any number of other details affecting the functional and geographic nexus between "a well' and the structure or facility that is the object of the agreement...."

*Id.* at 994–95.

The catering contract dealt with maintenance of facilities, i.e., employees and living quarters, related to in-field production. The quarters platform was located adjacent to a production platform, and the employees worked on a production platform. The purpose or function of the facilities covered by the contract was to sustain manpower for production. Conoco owns the quarters platform and the adjacent production platform. And additional "functional nexus" arises from the fact that production employees are unquestionably necessary for production from a well. The *Transco* factors that are relevant to this case argue for application of the OAIA. Our pre-*Transco* cases urge the same result.

In *Copous v. ODECO Oil & Gas Co.,* 835 F.2d 115 (5th Cir.1988), a carpenter sustained injury while replacing ceiling tile pursuant to a contract to renovate the living quarters of ODECO's production platform. ODECO contended that the OAIA does not apply to a contract for renovation to living quarters because the subject matter of the contract is not related to production. This court held that "[b]ecause the living quarters were essential to operation of the manned platform, ... a contract to renovate those living quarters is "related' to the production of oil and gas and within the scope of the O[A]IA...." *Id.* at 117. While *Copous* dealt with maintenance of the physical facility itself, we do not agree with Conoco that a contract to maintain quarters pertains to a well, while a contract to maintain production employees does not. *See also Fuselier v. Amoco Production Co.,* 546 So.2d 306, 307 (La.Ct.App.1989) (contract to cut grass on land-based production site pertains to a well).

Based on our consideration of the applicable *Transco* factors, and in light of *Copous* and *Fuselier,* we find that the catering contract in this case pertains to a well. We also find that the catering contract concerns "operations related to ... production," within the broad scope accorded "operations" under the OAIA. Consequently, the OAIA voids the indemnification provision in the contract. Louisiana's legislature enacted the OAIA to insure that negligence liability rests with the entity best able to "institute and enforce safe work practices and conditions." *Knapp v. Chevron U.S.A., Inc.,* 781 F.2d 1123, 1130 (5th Cir.1986). The district court's ruling accords with that policy.

AFFIRMED.