IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-20238
_____


NICHOLAS DESTEPHANO,

    Plaintiff-Counter Defendant-Appellant-Cross-Appellee,


    versus


BROADWING COMMUNICATIONS INC;
BROADWING TELECOMMUNICATIONS, INC.,

    Defendants-Counter Claimants-Appellees-Cross-Appellants.


_____

Appeals from the United States District Court
for the Southern District of Texas
(H-00-CV-2661)
_____

AUGUST 20, 2002


Before GARWOOD and DENNIS, Circuit Judges and LITTLE, District
Judge.[*]

GARWOOD, Circuit Judge:[**]

    Plaintiff-appellant-cross-appellee Nicholas DeStefano

_____

    [*]Chief District Judge of the Western District of Louisiana,
sitting by designation.

    [**]Pursuant to 5TH CIR. R.47.5 the Court has determined that this
opinion should not be published and is not precedent except under the
limited circumstances set forth in 5TH CIR. R. 47.5.4.

(DeStefano) appeals the district court order compelling arbitration.[1]  Defendants-appellees-cross-appellants Broadwing Communications, Inc. and Broadwing Telecommunications, Inc. (collectively, Broadwing) appeal an order of sanctions.  We affirm the district court in all respects.

### Facts and Proceedings Below

In the fall of 1998, Austin-based IXC Communications and its subsidiary, Eclipse Telecommunications, Inc. (collectively, Eclipse) began acquisition discussions with Costal Telephone Company (Coastal), a Houston-based telephone services company.  Eclipse is now Broadwing.  Coastal was a privately held company, owned by Andrew Bursten and other trustee entities (collectively, the Burstens).  On May 10, 1999, Eclipse acquired Coastal from the Burstens.

DeStefano was Coastal's sales manager and the supervisor of a large telemarketing force.  On January 8, 1999, DeStefano entered into an employment agreement (the agreement) with Eclipse.  The agreement provided that DeStefano would be employed by Eclipse for a three year term, commencing on the date that Eclipse acquired Coastal.  The agreement further provided that if DeStefano were terminated "without cause," prior to the expiration of the agreement he would be entitled to certain

_____

[1]As we understand it, plaintiff spells his name "DeStefano;" apparently through error it appears on the docket sheet and in the record as "Destephano."

2

severance payments.

The agreement also included an arbitration clause, which provided as follows:

> "<u>Binding Arbitration</u>.  The parties hereby consent to the resolution by binding arbitration of all claims or controversies in any way arising out of, relating to or associated with this Agreement.  Any arbitration required by this Agreement shall be conducted before a single arbitrator in Austin, Texas in accordance with the commercial arbitration rules of the American Arbitration Association then existing, and any award, order or judgment pursuant to such arbitration may be enforced in any court of competent jurisdiction.  The arbitrator shall apply rules of Texas law and the parties expressly waive any claim or right to an award of punitive damages.  All such arbitration proceedings shall be conducted on a confidential basis. Notwithstanding the foregoing, either party may seek injunctive or other equitable relief in a court of law without proceeding through arbitration."

The Burstens had placed a sum of "bonus money" in escrow with Craig Cavalier, the Burstens' attorney.  DeStefano was to receive the escrowed funds if he remained employed with Coastal for one year after Eclipse acquired Coastal.  If not, the funds were to revert to the Burstens.

In the fall of 1999, twenty-seven charges of discrimination were filed with the Equal Employment Opportunity Commission (EEOC) by employees in the Houston office of Coastal (now Eclipse).  Several of these charges alleged that DeStefano had instigated a sexually-charged work environment or that he had engaged in racial discrimination and harassment.

Eclipse terminated DeStefano's employment on November 4,

3

1999.  In December 1999, the Burstens filed suit against Broadwing in state court (the Bursten litigation), seeking a declaratory judgment regarding certain issues related to the purchase agreement.  After his termination, DeStefano made demand upon Cavalier for payment of the bonus money being held in escrow.  DeStefano alleges that Broadwing sent a letter to Cavalier stating, "Since the termination was for cause, no monies should be paid to Mr. DeStefano."  DeStefano filed an interpleader suit in state court with the Burstens and Cavalier to obtain the bonus money.  Broadwing was not a party to that suit.

On June 27, 2000, DeStefano filed the instant suit against Broadwing in Texas state court.  DeStefano alleged breach of contract, retaliatory discharge under Title VII, and tortious interference with contract.  On August 2, 2000, Broadwing removed the case to the United States District Court for the Southern District of Texas, Houston Division and filed a counterclaim alleging fraud, breach of fiduciary duty, and negligence by DeStefano in connection with Eclipse's purchase of Coastal. Broadwing filed a motion to compel arbitration pursuant to the arbitration clause in the agreement.  On October 30, 2000, the district court entered an order granting Broadwing's motion and dismissing DeStefano's suit against Broadwing (the arbitration order).  On November 3, 2000, Broadwing joined DeStefano in a

4

third-party action in the Bursten litigation, asserting the same causes of action originally brought as counterclaims against DeStefano in the instant suit.

On November 8, 2000, DeStefano filed a motion for sanctions, seeking monetary sanctions and seeking to have the order compelling arbitration rescinded and the case reinstated. The district court held a hearing on the sanctions motion on December 19, 2000. On January 31, 2001, the district court granted a monetary sanction against Broadwing in the amount of $5,160.00, but declined to rescind the arbitration order.

DeStefano appeals the district court's refusal to rescind the arbitration order. In the alternative, DeStefano argues that the district court erred in ordering arbitration of his Title VII claim, his tortious interference claim, and Broadwing's counterclaims. Broadwing cross-appeals the district court's imposition of the monetary sanction.

**Discussion**

1. Sanctions and Waiver

DeStefano argues that the district erred by declining to rescind the arbitration order as part of the sanction for its finding of civil contempt. He argues that Broadwing waived its right to arbitration by filing the third-party claims against DeStefano in the Bursten litigation. Broadwing, on its cross-appeal, argues that the district court erred in holding Broadwing

5

in contempt and ordering monetary sanctions.

We review a district court's order holding a party in contempt for abuse of discretion. *Martin v. Trinity Industries, Inc.*, 959 F.2d 42, 46 (5th Cir. 1992). The underlying factual findings are reviewed for clear error and the underlying conclusions of law are reviewed *de novo*. *American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000). "A movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Martin*, 959 F.2d at 47. Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process. *See American Airlines*, 228 F.3d at 585.

We first address Broadwing's appeal of the district court's finding of contempt. The district court did not clearly err in finding that Broadwing was in contempt of the arbitration order. It is undisputed that Broadwing joined DeStefano to the state court action four days after the district court entered the arbitration order. Broadwing inexplicably argues that it could not have violated the arbitration order because the arbitration order "in no way requires any definite or specific action on the part of Broadwing." Broadwing's motion to compel arbitration

6

requested, *inter alia*, the following relief: "Defendants [Broadwing] be ordered to submit all counterclaims to binding arbitration in accordance with Plaintiff's Employment Agreement." The arbitration order granted Broadwing's motion in full. The district court's order thus compelled Broadwing to submit its counterclaims to arbitration and the district court did not err in determining that submitting the *same* counterclaims to another forum – the state court – was a failure to comply with the arbitration order.

As an explanation of its joining DeStefano to the Bursten litigation, Broadwing asserted that there were communication delays and statute of limitations concerns on Broadwing's side. Nancy Patterson, counsel for Broadwing in this federal suit, asserted that the district court's arbitration order, entered on October 30, 2000, did not arrive in her office until November 2, 2000. Patterson explained that she was out of the office that day and did not become aware of the arbitration order until the late afternoon of November 3, 2000. The Bursten litigation was being handled, in state court, by another law firm, which, according to Broadwing, was unaware of the arbitration order when DeStefano was joined to the Bursten litigation on November 3, 2000. As the district court noted, Broadwing still did not dismiss DeStefano from the state court proceedings even after Broadwing became aware of the arbitration order and DeStefano had

7

still not been dismissed as of December 19, 2000, when the district court held its hearing on the sanctions motion. Broadwing also cited statute of limitations concerns regarding their fraud claims against DeStefano, although the fraudulent conduct allegedly took place in fall of 1998 and the statute of limitations for a fraud claim in Texas is four years. Tex. Civ. Prac. & Rem. Code § 16.004. The district court labeled Broadwing's arguments "wholly disingenuous." Broadwing argues that the district court did not make a specific finding of bad faith. But the district court held specifically that Broadwing "wilfully violated this Court's order," *id.* at 5, and, at any rate, "good faith is irrelevant as a defense to a civil contempt order," *Waffenschmidt v. Mackay*, 763 F.2d 711, 726. The district court did not abuse its discretion by holding that Broadwing was in contempt of the court's arbitration order.

The district court did not err in setting the amount of monetary sanctions at $5,160.00. The parties agree that this sum covers the cost of attorneys' fees charged to DeStefano in connection with bringing the motion for sanctions. As far as concerns monetary relief, this is the full amount that DeStefano requested. Compensation for losses sustained by the complainant is a proper purpose for sanctions awarded in a civil contempt proceeding. *American Airlines*, 228 F.3d at 585.

DeStefano also requested that the arbitration order be

8

rescinded and the court case be reinstated as a further sanction for Broadwing's contemptuous conduct. DeStefano, in his brief to this court, compares Broadwing's conduct to that of a party which has waived its contractual right to arbitration. When a district court has held that a party's conduct amounted to waiver of its right to arbitrate, we review that finding *de novo*. *Walker v. J.C. Bradford & Co.* 938 F.2d 575, 577 (5th Cir. 1991). However, in the instant case, we are considering conduct after arbitration has been sought and been ordered by the court, and we are reviewing a district court's assessment of sanctions in respect to that order. Thus, we still apply abuse of discretion review to the district court's determination that rescinding the arbitration order was not an appropriate sanction in this case. One proper purpose of a civil contempt sanction is to coerce the contumacious party into compliance with the court's order. *American Airlines*, 228 F.3d at 585. Rescinding the arbitration order would have served a precisely opposite purpose. It was within the district court's discretion to decline to rescind the arbitration order. The district court did not abuse its discretion by denying DeStefano's request of this sanction.

2. The Confidentiality Provision

Having held that the district court did not abuse its discretion by declining to rescind the arbitration order as a sanction, we now turn to DeStefano's challenges to the

9

substantive merits of the arbitration order.  We review the grant

of a motion to compel arbitration *de novo*.  *Webb v. Investacorp*,

89 F.3d 252, 257 (5th Cir. 1996).

"Arbitration is a matter of contract between the parties,

and a court cannot compel a party to arbitrate unless the court

determines the parties agreed to arbitrate the dispute in

question."  *Pennzoil Exploration and Prod. Co. v. Ramco Energy*,

139 F.3d 1061, 1064 (5th Cir. 1998).

> "In adjudicating a motion to compel arbitration under
> the Federal Arbitration Act, courts generally conduct a
> two-step inquiry. The first step is to determine
> whether the parties agreed to arbitrate the dispute in
> question. This determination involves two
> considerations: (1) whether there is a valid agreement
> to arbitrate between the parties; and (2) whether the
> dispute in question falls within the scope of that
> arbitration agreement. When deciding whether the
> parties agreed to arbitrate the dispute in question,
> courts generally . . . should apply ordinary state-law
> principles that govern the formation of contracts.  In
> applying state law, however, due regard must be given
> to the federal policy favoring arbitration, and
> ambiguities as to the scope of the arbitration clause
> itself must be resolved in favor of arbitration.  The
> second step is to determine whether legal constraints
> external to the parties' agreement foreclosed the
> arbitration of those claims."  *Webb*, 89 F.3d at 257 –
> 58 (internal citations and quotation marks omitted).

DeStefano first argues that the arbitration clause's

provision that "arbitration proceedings shall be conducted on a

confidential basis" renders the arbitration procedure an

inadequate alternative to the judicial forum.  He contends that

the confidentiality provision would preclude the parties from

making a record of the arbitration proceedings, thereby

10

precluding judicial review.

DeStefano relies on the following language from *Gilmer v. Interstate/Johnson Lane Corp.*, 111 S.Ct. 1647, 1655 (1991):

> "A further alleged deficiency of arbitration is that arbitrators often will not issue written opinions, resulting, Gilmer contends, in a lack of public knowledge of employers' discriminatory policies, an inability to obtain effective appellate review, and a stifling of the development of the law. The NYSE rules, however, do require that all arbitration awards be in writing, and that the awards contain the names of the parties, a summary of the issues in controversy, and a description of the award issued.  In addition, the award decisions are made available to the public." (internal citations omitted).

*Gilmer* does not, as DeStefano contends, establish "minimal standards" of non-confidentiality.  In the first place, the excerpted language does not constitute a holding of the Court; it merely recounts a party's argument and the Court's explanation of why it was unavailing.  In the second place, the *Gilmer* Court went on to note that "Gilmer's concerns apply equally to settlements of ADEA claims, which . . . are clearly allowed." *Id.*

Additionally, DeStefano has not cited any evidence or authority to support his contention that the "confidential basis" provision would, in fact, preclude creation of a record.[2]  Nor

---

[2]The arbitration clause further provides that the arbitration shall be conducted "in accordance with the commercial arbitration rules of the American Arbitration Association then existing."  The current version of those rules has not been placed into the record, but we note that Broadwing has asserted, and DeStefano has not denied, that they require the creation of a record at the request of any party to the arbitration.

has he presented any evidence or authority to support his speculation that confidentiality would have a chilling effect on the production of witnesses. DeStefano's point of error related to the confidentiality provision is without merit.

3. The Waiver of Punitive Damages

DeStefano next argues that his Title VII claim cannot be subject to arbitration because the arbitration clause provides, "the parties expressly waive any claim or right to an award of punitive damages." DeStefano asserts that punitive damages are a cause of action under Title VII and that, thus, they cannot be prospectively waived. *See Alexander v. Gardner-Denver Co.* 94 S.Ct. 1011, 1021-22 (1974). This argument is without merit.

If parties agree to arbitration, they will be held to it unless Congress has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue. *Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*, 105 S.Ct. 3346, 3354-55 (1985). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* at 3353. Doubts are resolved in favor of arbitrability. *Id.*

Punitive damages are not a cause of action under Title VII; they are a remedy that Title VII makes available in certain instances. *See Rubinstein v. Administrators of the Tulane Educ. Fund*, 218 F.3d 392, 404 (5th Cir. 2000). "The potential unavailability of punitive damages is not a ground for denying

12

effect to an otherwise valid agreement to arbitrate." *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1168 n.7 (8th Cir. 1983); *see also*, *Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222, 232 (3d Cir. 1997) ("The availability of punitive damages is not relevant to the nature of the forum in which the complaint will be heard. Thus, availability of punitive damages cannot enter into a decision to compel arbitration.").

The arbitrator may consider the argument that the remedy of punitive damages may not be effectively waived for a Title VII claim. *See Shearson/American Express v. McMahon*, 107 S.Ct. 2332, 2340 (1987) ("[T]here is no reason to assume at the outset that arbitrators will not follow the law."); *Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*, 105 S.Ct. 3346, 3354 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). The arbitrator's decision would be subject to judicial review. *See Shearson/American Express*, 107 S.Ct. at 2340 ("[S]uch review is sufficient to ensure that arbitrators comply with the requirements of the statute.") It may not even be necessary to reach this issue if it is determined that DeStefano's Title VII claim is without merit (or, even if meritorious, is not such as would support punitive damages under

13

Title VII).[3]

We hold that the district court did not err in holding that DeStefano's Title VII claim was arbitrable.

4. DeStefano's Tortious Interference Claim

---

[3]DeStefano's Title VII claim alleged in relevant part:

"RETALIATORY DISCHARGE

15. Plaintiff would show that Defendant has violated 42 U.S.C. § 2000e-3 by firing him for investigating allegations of unlawful discrimination and for attempting to assist and participate in an EEOC investigation of those allegations.

16. Charges were filed with the EEOC against Defendants which included allegations against Plaintiff. Plaintiff undertook his own investigation. Defendant, through attorneys, instructed Plaintiff to stop his investigation. The Defendant directed Plaintiff to meet with representatives of Defendant to discuss the matter. When Plaintiff notified Defendant that he intended to bring his attorney with him, the Defendant objected. Plaintiff appeared at the scheduled meeting with his attorney, but representatives of Defendant would not meet with them. In furtherance of its scheme to make Plaintiff a scapegoat and to deprive him of the benefits of his employment agreement, Defendant sought to preclude Plaintiff from using his lawyer. Shortly thereafter, Plaintiff was fired by Defendant with no explanation other than it was "for cause."

17. Based upon subsequent developments, it became clear that a goal of the new ownership was to make Plaintiff a scapegoat for the EEOC complaints, to suppress the facts about any culpability of the new owners, and to use an indemnity agreement from the prior owners and/or funds and benefits owing to Plaintiff to fund the settlement with the charging parties rather than conduct a good faith investigation into the complaints, and to deprive Plaintiff of the benefits of his employment contract. Each of (1) Plaintiff's attempt to investigate and participate in the EEOC charges investigation and (2) his use of a lawyer was a precipitating cause of the firing of Plaintiff."

14

DeStefano's next argument is that his tortious interference claim was outside the scope of the arbitration clause because it arose after his employment with Broadwing had ended. This argument is without merit.

The arbitration clause encompassed "all claims or controversies in any way arising out of, relating to or associated with this Agreement." The conduct that DeStefano alleges as the basis for his tortious interference claim is associated with the employment agreement with Broadwing (formerly Eclipse). DeStefano alleges that Broadwing tortiously interfered with his relationship with the Burstens by instructing Cavalier not to pay DeStefano the bonus money that the Burstens had put in escrow. The crux of DeStefano's argument is that Broadwing informed Cavalier that DeStefano was terminated "for cause" even though, according to DeStefano, the reasons for DeStefano's termination did not fall within the definition of "cause" as contained in the employment agreement.

In light of the strong federal policy favoring arbitration, doubts about the scope of an arbitration clause are resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 103 S.Ct. 927, 941 (1983). "[A]rbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Neal v. Hardee's Food*

15

*Systems, Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) (internal quotation marks omitted, citations omitted). An arbitration provision is generally interpreted according to ordinary state law principles governing the formation of contracts. *Webb*, 89 F.3d at 58; *see Metropolitan Prop. & Liab. Co. v. Bridewell*, 933 S.W.2d 358, 361 (Tex. App.–Waco, 1996) (citing *Neal* in support of finding that a tortious interference claim was properly within the scope of an arbitration clause).

In an arbitration-related context, we recently mandated a broad reading of the phrase "relates to" as used in a statute. *See Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002). *Beiser* involved interpretation of "relates to" as that phrase is used in a statute conferring jurisdiction. *Id.* This is, of course, not equivalent to a holding that similar phrases in an arbitration agreement must be interpreted in that fashion. Still, in a general way, we find *Beiser* instructive as to the ordinary meaning of a broad formulation such as the one we interpret here -- "in any way arising out of, relating to or associated with." This formulation is broad enough to encompass DeStefano's claim, which was based on his assertion that the terms of the agreement entitled him to receive the bonus money and severance benefits. Because we must resolve any doubts in favor of arbitrability, we conclude that the district court did not err in holding that DeStefano's tortious interference claim was within the scope of

16

the arbitration agreement.

5. Remaining Points of Error

On appeal, DeStefano raises two arguments that were not made in the district court: (1) He argues that Broadwing's counterclaims were not properly within the scope of the arbitration clause, and (2) he argues that he may not be compelled to arbitrate his tortious interference claim because it is against Texas public policy to permit waiver of punitive damages for such a claim.  DeStefano concedes that these issues were not properly preserved for appeal.  This court will not, as a general rule, consider issues not raised in the district court. *United States v. Parker*, 722 F.2d 179, 183 (5th Cir. 1983).  We decline to do so here.[4]

## Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[4]We note that, at any rate, our analysis of the punitive damages issue as it related to the Title VII claim would dispose of the same argument as it relates to the tortious interference claim.

We further observe that DeStefano informs us that Broadwing has dismissed its state court suit (third party claim) against him.

17