# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 12, 2023

Lyle W. Cayce
Clerk

No. 23-30076

QBE Syndicate 1036,

*Plaintiff—Appellant*,

*versus*

Compass Minerals Louisiana, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:20-CV-554

Before Smith, Southwick, and Higginson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

The insurer of two companies that contracted for work at a Louisiana salt mine filed a declaratory action, asserting that the Louisiana Oilfield Anti-Indemnity Act applied to invalidate certain indemnification and additional-insured provisions in their contracts. The insurer contends that the Act applied to agreements that pertain to "drilling for minerals," and that these agreements are thus covered because the salt mine uses a "drill-and-blast" method for mining salt. Finding no clear and controlling precedent on this issue of Louisiana law, we CERTIFY two questions to the Louisiana Supreme Court.

No. 23-30076

## I.

Defendant-Appellee Compass Minerals Louisiana, Inc. ("Compass") is part of a "multi-national mineral company that owns and operates multiple salt mines in North America and the United Kingdom." Among Compass's locations is its Cote Blanche salt mine, located on Cote Blanche Island in St. Mary Parish, Louisiana.

At the Cote Blanche salt mine, Compass uses a "drill-and-blast" mining method. On its website, Compass describes the process as follows:

> The drill-and-blast mining method begins by cutting into the rock salt face using specialized equipment. We then drill holes into the face and use explosives to break the salt into large rocks. Front-end loaders and trucks load and haul the salt to a crusher where it is reduced in size, loaded onto a conveyor belt and transported to a mill. The mill screens and crushes the rock salt to the customary size before the salt is hoisted to the surface.

For underground fire-prevention and electrical support at the Cote Blanche salt mine, Compass contracted with Louisiana-based companies Fire & Safety Specialists, Inc. ("FSS") and MC Electric, LLC ("MCE"). In its respective purchase orders with each contractor, Compass included an indemnity provision, under which FSS and MCE agreed to indemnify, hold harmless, and defend Compass from all claims and liabilities for any damage, injury, death, loss, or destruction of any kind relating to the parties' agreement. Each purchase order also included an additional-insured provision, requiring FSS and MCE to name Compass as an additional insured on the insurance policies required by the contract.

On August 15, 2019, an electrician employed by MCE died in an accident at the Cote Blanche salt mine. The decedent, Shawn Clements, "contacted an energized electrical circuit while attempting to install a new

2

circuit for the fire suppression system at the salt mine." Clements's family filed a survival and wrongful-death suit in state court against Compass and FSS, alleging that a Compass electrician and FSS technician had incorrectly advised Clements that the fire-suppression system was de-energized. Plaintiff-appellant QBE Syndicate 1036 ("QBE") represents that the suit remains pending in the 16th Judicial District Court for the Parish of St. Mary, under Case No. 135048.

At the time of the accident, both FSS and MCE held a commercial general liability policy with QBE. Compass sent a letter to QBE seeking defense, indemnity, and coverage for the wrongful-death suit, on the basis of the indemnification and additional-insured provisions of the MCE and FSS purchase orders.

On May 1, 2020, QBE filed a declaratory action in federal court, asserting that the indemnification and additional-insured provisions in the FSS and MCE purchase orders are "null, void, and unenforceable" under the Louisiana Oilfield Anti-Indemnity Act, La. Stat. Ann. § 9:2780, ("LOAIA"). In its complaint, QBE contended that LOAIA renders "void and unenforceable" certain indemnification provisions in "agreement[s] pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state." QBE alleged that Compass uses a drill-and-blast mining method at the Cote Blanche Salt mine, and that Compass's purchase orders with FSS and MCE are covered by the LOAIA because they are "agreements" "pertaining to . . . drilling for minerals." QBE sought a declaration that it "owes no duties to Compass whatsoever in connection with the [state] lawsuit."

On August 22, 2022, QBE and Compass filed cross-motions for summary judgment. QBE argued that, because Compass's drill-and-blast method of mining for salt constitutes "drilling for minerals," as used in the

statute, the provisions Compass relied on in its purchase orders with FSS and MCE were void and unenforceable under the LOAIA. Compass disagreed, arguing in its motion that the LOAIA requires a nexus to a well, which Compass's Cote Blanche operations did not have, and that the drill-and-blast method is "completely different from the exploration and drilling methods used by oil and gas . . . companies."

On December 16, 2022, the district court granted Compass's motion and denied QBE's motion, concluding that the LOAIA did not apply to the purchase orders and therefore did not invalidate the indemnification provisions. The court concluded that, under this court's decision in *Transcontinental Gas Pipe Line Corp. v. Transportation Insurance Co.*, 953 F.2d 985 (5th Cir. 1992), the LOAIA requires that the agreement "pertain to" a "well," and it is undisputed that the mining operations at the Cote Blanche salt mine do not involve a well. Moreover, the court rejected QBE's argument that Compass "drill[s] for" salt by using the drill-and-blast method for breaking a salt wall. It concluded, relatedly, that the term "drilling for minerals" in the LOAIA "should be construed as referring to the drilling of a well." QBE appeals.

## II.

The parties agree that Louisiana substantive law—here, the LOAIA—governs resolution of this diversity case. *Gulf & Miss. River Transp. Co. v. BP Oil Pipeline Co.*, 730 F.3d 484, 488 (5th Cir. 2013) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). As a federal court interpreting Louisiana law, we would "first look to final decisions of the Louisiana Supreme Court." *Id.* (citation omitted).

Louisiana is one of four states that have passed an oilfield anti-indemnity act. The parties here dispute the meaning of Louisiana's Act. The LOAIA, passed in 1981, nullifies certain contractual defense and indemnity

provisions as contrary to public policy. As the Louisiana Supreme Court has explained, the LOAIA "arose out of a concern about the unequal bargaining power of oil companies and contractors and was an attempt to avoid adhesionary contracts under which contractors would have no choice but to agree to indemnify the oil company, lest they risk losing the contract." *Fontenot v. Chevron U.S.A. Inc.*, 676 So. 2d 557, 563 (La. 1996).

To that end, the text of the Act says:

A.   The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some *agreements pertaining to wells for oil, gas, or water, or drilling for minerals* which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.

B.   Any provision contained in, collateral to, or affecting *an agreement pertaining to a well for oil, gas, or water, or drilling for minerals* which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

C.   The term "agreement," as it pertains to a well for oil, gas, or water, *or drilling for minerals* which occur in a solid, liquid, gaseous, or other state, as used in this Section, means *any agreement or understanding*, written or oral, concerning any operations related to the exploration,

No. 23-30076

development, production, or transportation of oil, gas, or water, *or drilling for minerals* which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing *or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral*, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.

LA. STAT. ANN. § 9:2780(A)-(C) (emphases added).

QBE argues that the LOAIA applies to Compass's purchase orders with FSS and MCE because the agreements pertain to "drilling for minerals" at the Cote Blanche salt mine—specifically, because Compass uses the drill-and-blast method for mining salt. QBE therefore contends that the indemnification and additional-insured provisions in the agreements are null and void, and it accordingly does not owe coverage for the *Clements* lawsuit.

QBE's reading of the LOAIA requires two key interpretive arguments about the statute. First, the statute must be read to cover operations beyond just those pertaining to a well. If the statute governs only those agreements with a nexus to a well, then it does not apply here; it is undisputed that Compass's salt mining does not involve a well. Second, even if there is no "well" requirement, the agreements at issue in this case must "pertain to" "drilling for minerals," as that term is used in the statute. If either of these arguments fails, then the LOAIA does not apply to the agreements here.

**A.**

6

Compass argues, and the district court agreed, that for the LOAIA to apply, the agreement at issue must pertain to a well. Again, this issue may be dispositive; it is undisputed that Compass's operations do not involve a well.

We first address whether this court or the Louisiana Supreme Court has decided this issue because, if so, we would not look further. *See Kelly v. State Farm Fire & Cas. Co.*, 582 F. App'x 290, 293 (5th Cir. 2014) ("[O]nce a panel of this court decides an issue of state law by making an *Erie* guess, this court is bound by this decision, unless a subsequent state statute or state court decision has rendered the panel's interpretation 'clearly wrong.'" (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 462–63 (5th Cir. 2010)); *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000) ("To determine Louisiana law . . . this Court should first look to final decisions of the Louisiana Supreme Court." (citation omitted)). "If there is no 'clear and controlling precedent' from that court on a determinative question of law, then we may certify the question to the court." *Kling v. Hebert*, 60 F.4th 281, 285 (5th Cir.), *certified question accepted*, 359 So. 3d 499 (La. 2023) (citing LA. STAT. ANN. § 13:72.1, and La. Sup. Ct. R. XII § 1).

We conclude that, although courts have stated in broad terms that the LOAIA requires that an agreement pertain to a well, neither this court nor the Louisiana Supreme Court has addressed the question presented by QBE.

We are "a strict *stare decisis* court," meaning that a prior panel's "interpretation of state law is 'no less binding on subsequent panels than are prior interpretations of federal law.'" *Bustos*, 599 F.3d at 462 (quoting *FDIC v. Abraham*, 137 F.3d 264, 268 (5th Cir. 1998)). Here, Compass and the district court find support for the LOAIA's "well" requirement in this court's 1992 opinion in *Transcontinental Gas*, 953 F.2d at 985. The district court concluded, and Compass urges on appeal, that because the operations

at the Cote Blanche salt mine do not "pertain to" a well, "under *Transcontinental Gas*, 'the inquiry ends.'"

The *Transcontinental Gas* opinion weighs in Compass's favor, but, because of an explicit disclaimer, the case does not do the work that Compass asks of it. In *Transcontinental Gas*, the court addressed whether the LOAIA covered a natural-gas transportation company's ("Transco's") agreements with a contractor providing painting, sandblasting, and inspection work on Transco's "platforms and pipelines located in the Gulf of Mexico or in the adjacent marshlands of Louisiana." *Transcon. Gas*, 953 at 986. The court rejected the insurers' and amici's arguments that the LOAIA covers "all contracts touching transportation of natural gas." *Id.* at 989-95. In reaching its conclusion, the court stated that "the threshold requirement for applicability of the [LOAIA] is that the contract under scrutiny pertain to a well." *Id.* at 991. The court then set out a two-step process for assessing the LOAIA's applicability and, in so doing, reiterated multiple times that the Act requires that the agreement pertain to a well. *Id.* That proposition may seem to resolve this case, and Compass argues as much.

But the court in *Transcontinental Gas* included a footnote indicating that the "pertains to a well" rule is not as absolute as it seems. Specifically, in the main text, the court quotes the legislature's proclamation in subsection (A) of the statute that "an inequity is foisted on certain contractors . . . by the defense or indemnity provisions . . . , contained in some [1] *agreements pertaining to wells* for oil, gas, or water, or [2] drilling for minerals." *Id.* at 990 (emphasis and alterations in original). It then included a footnote that says: "The APS/Transco agreement does not implicate 'drilling for minerals,' if in fact 'drilling for minerals' can be extricated from 'wells.' Therefore, the portion of the Act concerned with 'drilling for minerals' is not directly at issue here." *Id.* at 990 n.18.

QBE has seized on this. Its fundamental argument is that "drilling for minerals" is a separate basis for LOAIA's application, having nothing to do with "wells for oil, gas, or water." Recall that the statute applies to "agreements pertaining to a well for oil, gas, or water, or drilling for minerals." LA. STAT. ANN. § 9:2780(A). Thus, the argument goes, *Transcontinental Gas*'s rule that an agreement must pertain to a well applies only if the agreement does not otherwise pertain to "drilling for minerals." In other words, only if a party is invoking the "wells for oil, gas, or water" clause does it need to show a nexus to a well. Otherwise, LOAIA can apply so long as the agreement "pertain[s] to . . . drilling for minerals." *Id.*

QBE's view appears to fairly read *Transcontinental Gas*. Although the main text speaks broadly and repeatedly about the LOAIA as a whole,[1] footnote 18 is clear that the "drilling for minerals" language is not at issue in the case. More importantly, the court in footnote 18 raises the very question that QBE now asks this court to answer—namely, whether, "in fact, 'drilling for minerals' *can* be extricated from wells." *Transcon. Gas*, 953 F.2d at 990 n.18 (emphasis added). It cannot be right, then, that *Transcontinental Gas* on its own terms confirms that even a contract for "drilling for minerals" requires a nexus to a well.

Accordingly, we conclude that *Transcontinental Gas* does not hold that, under all circumstances, the LOAIA requires that a contract "pertain to a well." The court explicitly left that question open. Compass and the district court are incorrect in contending otherwise.

Having so concluded, we must ask: *Does* the LOAIA apply to only those contracts that "pertain to a well," even if those agreements involve

---

[1] *E.g.*, *Transcon. Gas*, 953 F.2d at 991 ("[T]he legislature intended the Act to apply if (but only if) an agreement pertains to a well."); *id.* ("[T]he threshold requirement for applicability of the statute is that the contract under scrutiny pertain to a well.").

No. 23-30076

"drilling for minerals"?  Our court's caselaw has not shed further light on this question.  We have, in numerous cases, reiterated and reinforced *Transcontinental Gas*'s rule that the LOAIA applies to those contracts that pertain to a well, but with no separate analysis of the "drilling for minerals" clause.[2]

Nor do we find an answer in state law.  The Louisiana Supreme Court appears to have discussed the meaning of the LOAIA on only three occasions since the Act's passage in 1981.  Two of those cases say nothing about whether the LOAIA applies only to agreements that pertain to a well.  *See Meloy v. Conoco, Inc.*, 504 So. 2d 833, 838 (La. 1987) (explaining what types of contractual provisions are nullified by the LOAIA but without discussion of what industries, services, or operations are covered); *Rodrigue v. LeGros*, 563 So. 2d 248, 251-56 (La. 1990) (summarizing the LOAIA only to decide whether maritime law or the LOAIA should apply to an indemnity provision and concluding that the maritime law of indemnity applies).

_____

[2] *E.g.*, *Tetra Techs., Inc. v. Cont'l Ins. Co.*, 814 F.3d 733, 743-46 (5th Cir. 2016) (per curiam) (citing the two-step process from *Transcontinental Gas* and "conclud[ing] that a contract for salvaging a platform from a decommissioned oil well has a sufficient nexus to a well under [the LOAIA]"); *Verdine v. Ensco Offshore Co.*, 255 F.3d 246, 253-54 (5th Cir. 2001) (applying the *Transcontinental Gas* factors and concluding that the agreements at issue "pertained to specific wells and that the agreement related to the exploration, development, production, or transportation of oil, gas, or water"); *Roberts v. Energy Dev. Corp.*, 104 F.3d 782, 784-85 (5th Cir. 1997) (explaining that the LOAIA nullifies "indemnity provisions [that] are part of an agreement pertaining to an oil or gas well," and concluding that, there, the "nexus [was] strong enough"); *U.S. Fid. & Guar. Co. v. Loop, Inc.*, 961 F.2d 84, 85 (5th Cir. 1992) (per curiam) (approvingly quoting *Transcontinental Gas* as holding that the LOAIA applies "if (but only if) the agreement . . . pertains to a well" and holding that oil storage wells at a salt dome cavern do not qualify because "the 'well' must be a well incidental to the production of oil or gas"); *Broussard v. Conoco, Inc.*, 959 F.2d 42, 44-45 (5th Cir. 1992) (citing *Transcontinental Gas*'s "well" requirement and concluding that the contract at issue "pertains to a well").

No. 23-30076

The third case, *Fontenot v. Chevron USA*, 676 So. 2d 557 (La. 1996), is the only time *after* our court's decision in *Transcontinental Gas* that the Louisiana Supreme Court has discussed the LOAIA in any degree of detail. In *Fontenot*, the court addressed the applicability of the Act to a provision in a company's contract to provide "remedial well services" as well as drilling and workover operations on several of Chevron's platforms in the Gulf of Mexico. *Id.* at 559. The court explained the purpose of the LOAIA and then said: "To determine the applicability of Louisiana's Anti–Indemnity Act, courts have engaged in a two-step test," citing *Transcontinental Gas*. *Id.* at 564. "First," the court said, "there must be an agreement that 'pertains to' an oil, gas or water well." *Id.* "Second, the agreement must be related to exploration, development, production, or transportation of oil, gas, or water." As to the case before it, the parties' "contract for remedial well services" "passe[d] these two tests." *Id.*

*Fontenot* thus enshrines the "well" requirement in Louisiana law. But like our court's caselaw, it is silent as to whether an agreement for "drilling for minerals" must *also* pertain to a well.

Lower state courts in Louisiana have followed *Fontenot*'s guidance[3] and applied the "well" requirement. *E.g.*, *Palmour v. Gray Ins. Co.*, 731 So. 2d 911, 914 (La. App. 5 Cir. 1999) (citing *Fontenot* and *Trancontinental Gas* and concluding that, despite that one party was "in the business of performing oilfield work," the parties' "contract to rent a crane to be used in some unnamed purpose," was "not an oilfield, gas field or water related agreement and does not meet the 'pertains to' requirement"); *Rogers v.*

---

[3] Our court is "not bound by state appellate court decisions," but "we will not disregard them 'unless [we are] convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Transcon. Gas*, 953 F.2d at 988 (citation omitted) (alteration in original).

No. 23-30076

*Integrated Expl. & Prod., LLC*, 265 So. 3d 880, 887-89 (La. App. 4 Cir. 2019) (citing *Fontenot* and *Transcontinental Gas* and concluding that the LOAIA did not apply because the pipeline operations did not sufficiently pertain to a well). QBE cites no state case invoking the "drilling for minerals" clause in a way that avoids the "well" requirement. We have similarly found no such case.

Accordingly, we find no "clear and controlling precedent" on this issue of Louisiana law. *Kling*, 60 F.4th at 287. We conclude that certification of this question is appropriate.

## B.

Moreover, if the LOAIA does *not* have a "well" requirement, it remains an open question whether the agreements in this case, which governed fire-suppression and electrical work at a salt mine, are agreements "pertaining to . . . drilling for minerals." LA. STAT. ANN. § 9:2780(B). Because the antecedent question has not itself been answered, it follows that there is no law—from our court or Louisiana state courts—addressing the meaning of "drilling for minerals" or the associated exemplar "operations" listed in subsection (C) of the statute. We conclude that this question—the application of the LOAIA, as construed to the agreements in this case—is fit for certification as well.

## III. Questions Certified

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE LOUISIANA SUPREME COURT, PURSUANT TO RULE XII, LOUISIANA SUPREME COURT RULES.

No. 23-30076

TO THE LOUISIANA SUPREME COURT AND THE HONORABLE JUSTICES THEREOF:

## A.  Style of the Case

The style of the case in which this certification is made is *QBE Syndicate 1036 v. Compass Minerals Louisiana, Inc.*, No. 23-30076, in the United States Court of Appeals for the Fifth Circuit.  The case is on appeal from the United States District Court for the Western District of Louisiana.

## B.  Statement of the Facts

The statement of facts, showing the nature of the cause and the circumstances out of which the questions or propositions of law arise, is provided above.

## C.  Questions of Law to be Answered

We certify the following questions to the Louisiana Supreme Court:

1.  Does the Louisiana Oilfield Anti-Indemnity Act, LA. STAT. ANN. § 9:2780, apply to provisions in agreements that pertain to "drilling for minerals," even where the agreement does not "pertain[] to a well"?

2.  If the Act applies to agreements that pertain to "drilling for minerals," irrespective of the agreement's nexus to a well, does the Act apply to invalidate these indemnification and additional-insured provisions, contained in contracts for fire suppression and electrical work in a salt mine, by virtue of the salt mine's use of a "drill-and-blast" method for mining salt?

## IV.

13

No. 23-30076

We hereby CERTIFY the above questions to the Louisiana Supreme Court. We disclaim any intent that the Louisiana Supreme Court confine its reply to the precise form or scope of the legal questions we certify. We transfer to the Louisiana Supreme Court the record and appellate briefs in this case with our certification. This panel retains cognizance of this appeal pending response from the Louisiana Supreme Court.